STATE of Missouri, Respondent,

v.

Richard WEDDLE, Appellant.

No. ED 76146.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 14, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 3, 2000.

Application for Transfer Denied
June 27, 2000.

Arthur G. Muegler, Jr., St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Jefferson City, for respondent.

ROBERT E. CRIST, Senior Judge.

Richard Weddle (Defendant) appeals his convictions for carrying a concealed weapon, possession of methamphetamine with intent to distribute, and misdemeanor possession of marijuana, in violation of section 571.031, RSMo 1994, section 195.211, RSMo Cum.Supp.1999, and section 195.202, RSMo 1994, respectively. On his appeal, Defendant contends: (1) he was unreasonably seized without reasonable suspicion in violation of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); (2) the search of his automobile was conducted without probable cause; and (3) there was insufficient evidence to support his convictions for carrying a concealed weapon, possession of methamphetamine with intent to distribute, and possession of marijuana. We reverse and order the Defendant discharged.

We find Defendant's first point dispositive. In Point I, Defendant contends the trial court erred in denying his motion to suppress and allowing the admission of exhibits 1 through 25 because the exhibits were the illegal fruits of an unreasonable search and seizure of Defendant in violation of his Fourth Amendment rights.

At a suppression hearing, the State bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled. Section 542.296.6, RSMo 1994; *State v. Milliorn*, 794 S.W.2d 181, 184 (Mo. banc 1990). When reviewing a motion to suppress, we examine the record made at the motion to suppress hearing as well as the trial record. *State v. Collins*, 816 S.W.2d 257, 258 (Mo.App. E.D.1991). In so reviewing, we view the facts in the light most favorable to the order challenged on appeal. *State v. Riddle*, 843 S.W.2d 385, 386 (Mo.App. E.D.1992). An appellate court gives deference to the trial court's factual findings and credibility determinations reviewing only to determine if they

are clearly erroneous, but reviews questions of law *de novo. State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998). However, the question of whether the historical facts as found by the trial court add up to reasonable suspicion requires *de novo* review. *See, Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996); *State v. Werner,* 9 S.W.3d 590, 595 (Mo. banc 2000).

Applying this standard of review, the following facts were presented at the motion to suppress and the trial: On February 13, 1998, at about 9:20 a.m., Officer Michael L. Wirt was on duty for the City of St. Clair Police Department in Franklin County when he received a dispatch for a possible intoxicated driver on the Hardee's lot. An anonymous call had been placed about the driver who was occupying a blue-gray van on the north end of the Hardee's lot. Wirt admitted that the anonymous call provided information that was not reliable. Wirt arrived at the Hardee's about 9:25 a.m. and saw a blue-gray Ford Econoline parked on the north end of the lot. He saw a lone white male, who was Defendant, seated in the driver's seat. Defendant was "kind of slumped over the wheel like he was resting his head on the wheel." At this time, Wirt did not suspect Defendant was committing a crime and Defendant was not doing anything wrong. Still, Wirt approached the van and tapped on the window. Defendant did not respond, so Wirt tapped slightly harder on the window. At this time, Defendant woke up. He was startled and his eyes were wide. He had a surprised look on his face. Wirt testified that he did not regard Defendant's reaction as unusual, but rather it was a normal reaction. At this time, Wirt had no articulable facts that led·him to believe Defendant was intoxicated or had committed a crime. Yet, to ensure Defendant was not intoxicated, Wirt motioned him out of the van.

When Defendant exited the van, Wirt smelled no alcohol and realized Defendant was not intoxicated. Wirt explained why he was questioning Defendant, who said he did not drink and was fine. Wirt did notice that Defendant seemed extremely nervous and was rubbing his head and body and bouncing around. At this time, Wirt did not think this was unusual. Defendant was polite to Wirt and non-threatening. Wirt did not pat Defendant down for any weapons and testified that he was not in fear for his personal safety. After talking with Defendant, Wirt concluded he was not intoxicated. Wirt testified that at this time he finished his investigation about a possible intoxicated driver. At this point, Wirt's reasons for approaching and detaining Defendant were complete.

Even so, Wirt continued to detain Defendant and asked him for his driver's license. Defendant became increasingly nervous. Wirt testified that Defendant asked "numerous" times to get a cigarette from the van, and each time Wirt denied his request. Wirt ran a warrant check on Defendant. While Wirt was running the warrant check, he observed Defendant was acting extremely nervous and upset, rubbing his head and fidgeting. Defendant asked if he could get a coat because he was cold, but Wirt refused his request. However, Wirt admitted that it was cold and Defendant had reason to ask for a coat. The temperature was between 28 and 30 degrees.

The warrant check came back negative. At this time, acting on a "hunch" that something was wrong, Wirt asked Defendant if he had anything illegal in his van and Defendant replied in the negative. Wirt then asked him if he had any weapons and Defendant replied in the negative. Wirt asked him if he could search the interior of the van and its contents. According to Wirt, Defendant said, "sure, sure, sure, search anything in there. Go ahead. Go ahead." At this time, Wirt patted Defendant down and found nothing. He then handcuffed Defendant and secured him in his patrol car.

Wirt then searched the van. He began his search of the van on the driver's side.

He noticed that in between the driver's seat and passenger seat there was a brown bathroom-size wastebasket. Sticking out of the wastebasket was a 7-inch hunting knife in its sheath. The knife was standing on end, leaning against the side of the wastebasket. The wastebasket also contained a cigar box that contained 72 empty clear plastic baggies. He also found a briefcase on the floorboard behind the passenger seat. The briefcase was unlocked and slightly open. Inside, he found a box of CCI .25 automatic pistol ammunition, a gray metal box, an adult magazine, a nylon pouch with assorted folding pocketknives, and a small caliber pistol. He used a key found inside the briefcase to open the gray metal box. Inside the gray metal box, he found a small baggie of marijuana, two cellophane bags with a white powdery residue, a plastic scale with white powder residue, three glass vials with white powder residue, a black vinyl pouch with 16 empty glass vials in it, a gold tear-drop container with white powder residue and assorted knives and razor blades. Wirt seized all of the evidence and arrested Defendant. Laboratory tests showed the white powder residue amounted to .12 grams of methamphetamine, less than one hit and not marketable on the street.

Prior to trial, Defendant moved for suppression of the evidence seized from his van. The trial court held a hearing on the motion and denied it without issuing findings of fact. Defendant preserved his objections to the evidence by objecting at trial and including his objection in his motion for judgment of acquittal or new trial.

The Fourth Amendment to the United States Constitution preserves the right of citizens to be free from unreasonable searches and seizures. U.S. Const. Amend. IV. The State does not dispute that Defendant was "seized" for purposes of the Fourth Amendment when Wirt ordered him out of the van, but instead argues the seizure was reasonable.

■■ Generally, a search or seizure is only permissible if there is probable cause to believe a person has committed or is committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). However, the United States Supreme Court has held that the Fourth Amendment allows a brief investigative detention if the officer has a reasonable suspicion, based on specific and articulable facts, that the person is involved in criminal activity. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880; *State v. Franklin*, 841 S.W.2d 639, 641 (Mo. banc 1992). In determining whether the seizure and search were unreasonable, the court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879.

■ Here, Defendant had not committed any crime when approached by Officer Wirt and Wirt admitted that he did not suspect Defendant of committing any crime at that time. He was merely checking out an anonymous tip the police received. An anonymous tip by itself seldom, if ever, provides reasonable suspicion that a person has committed a crime warranting a *Terry*-stop. *See, Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415–16, 110 L.Ed.2d 301 (1990). Officer Wirt admitted the anonymous tip in question did not provide reliable information. Therefore, Wirt could only detain Defendant to investigate the anonymous tip if he acquired information providing reasonable suspicion that Defendant had committed or was committing a crime. When he approached Defendant to detain him, Wirt admittedly had no suspicion, let alone reasonable suspicion, Defendant had committed or was committing a crime.

■ The State argues Wirt did have reasonable suspicion because Defendant was "slumped" over the wheel of the van. Even assuming those facts would have warranted an investigation and a brief detention of Defendant, Wirt's con-

tinued detention of Defendant after determining he was not intoxicated was illegal. If a detention continues "beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure." *State v. Stevens,* 845 S.W.2d 124, 128 (Mo.App. E.D.1993); *See also, State v. Pfleiderer,* 8 S.W.3d 249, 256–57 (Mo.App. W.D. 1999); *State v. Woolfolk,* 3 S.W.3d 823, 829 (Mo. App. W.D.1999); *State v. Slavin,* 944 S.W.2d 314, 317–18 (Mo.App. W.D.1997). An investigative detention may not last any longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). "The scope of the detention must be carefully tailored to its underlying justification." *Id.*

Here, any further detention of Defendant was not justified by the circumstances and exceeded the limits of a *Terry* investigative stop. The purpose of the stop, to investigate a possible intoxicated driver, was satisfied as soon as Defendant stepped from the van, and Wirt smelled no alcohol and realized Defendant was not intoxicated. Wirt acknowledged that his purpose was accomplished at the time he finished his investigation about a possible intoxicated driver. At this point, Wirt's reasons for approaching and detaining Defendant were complete. Thus, any reasonable suspicion necessary to detain Defendant had disappeared.

In response, the State argues that reasonable suspicion to continue detaining Defendant did arise, pointing to Defendant's excessive nervousness and fidgeting. Yet, when Wirt initially approached Defendant, ordered him out of the van and questioned him, Wirt did not think Defendant's behavior or nervousness was abnormal. Only after continuing to detain him, checking his driver's license and questioning him, did Wirt conclude his actions were unusual. Therefore, any possible reasonable suspicion for continuing to detain Defendant did not arise during Wirt's lawful seizure of Defendant.

We agree with the State's contention that nervousness can be considered in determining whether reasonable suspicion exists under the totality of the circumstances. *See, Stevens,* 845 S.W.2d at 128. Yet, nervousness alone, even if excessive, cannot provide reasonable suspicion necessary to detain Defendant further. *Woolfolk,* 3 S.W.3d at 829; *Slavin,* 944 S.W.2d at 320; *See also, State v. Rodriguez,* 904 S.W.2d 531, 536–37 (Mo.App. S.D.1995). It is common knowledge that most citizens, whether innocent or guilty, when confronted by a police officer are likely to exhibit some signs of nervousness or fidgeting. Here, Wirt could not point to anything more than Defendant's excessive nervousness and that he "stared" at the van door. These factors alone cannot support reasonable suspicion. Even Wirt acknowledged in his testimony that he simply acted on a "hunch" that something was wrong. Hunches and suspicions, even if acted on in good faith, are not enough to warrant a search or seizure. *State v. Hensley,* 770 S.W.2d 730, 734 (Mo.App. S.D.1989).

The State relies on *State v. Hernandez,* 954 S.W.2d 639 (Mo.App. W.D.1997) and *State v. Adell,* 716 S.W.2d 469 (Mo.App. E.D.1986) to support its position. However, in *Hernandez,* there was something more than just nervousness to support reasonable suspicion. In that case, officers received a radio dispatch reporting that Hispanics were throwing rocks at a specific building. *Hernandez,* 954 S.W.2d at 641. When they arrived, they saw a group of men and got out to investigate. *Id.* Defendant Hernandez placed his hands in his coat pocket, turned and ran away from the police. *Id.* An officer ordered him to stop and then gave chase. *Id.* While running, the officer observed Hernandez was carrying a black object in his right hand. *Id.* An officer tackled Hernandez, who then tried to stab him. *Id.* This case involved something more than simple ner-

vousness, but instead a full flight from police while carrying a suspicious object.

*Adell* is also distinguishable. In *Adell,* an officer received a report of shots being fired and several men chasing another man. *Adell,* 716 S.W.2d at 470. The officer stopped Adell for questioning because she noticed him with another man near the location. *Id.* at 471. Further, when the men saw her marked patrol car, they slowed down, kept looking back at the vehicle, and looked nervous. *Id.* The court concluded that given the time, 3:30 a.m., the proximity to the reported incident, and the behavior, the officer was justified in her initial stop of Adell. *Id.* In addition, we note there was no question of a continued detention beyond that necessary to investigate the dispatch.

In its brief, the State contends Wirt was concerned Defendant was under the influence of some other drug. Yet, we find no evidence in the record to support this assertion. The State cites to a portion of the motion to suppress hearing in making its assertion, but those pages do not contain any mention of drugs. Our review of the record reveals only one instance in which Wirt directly addressed this issue. When asked if he had formed any opinion about Defendant's potential use of a controlled substance, Wirt simply testified, "May have." No attempt was ever made to have Wirt elaborate on this cryptic statement. This testimony is not sufficient for the State to satisfy its burden in a motion to suppress hearing.

Moreover, we note that if Wirt were really concerned about the possibility that Defendant would drive while intoxicated or under the influence of drugs, the reasonable response would be to perform field sobriety tests. Yet, Wirt performed none. Instead, he asked if there were weapons or drugs in the car and requested consent to search the car, actions which would not assist Wirt in an investigation of the offenses of driving while intoxicated or driving under the influence of drugs.

The State also contends the detention turned into a consensual encounter and that Defendant consented to remaining at the scene and answering Wirt's questions, as well as consenting to being handcuffed and "secured" in the patrol car while Wirt searched the van. Further questioning following the conclusion of an investigative stop is allowed if the encounter has turned into a consensual one. *State v. Scott,* 926 S.W.2d 864, 869 (Mo. App. S.D.1996). This change occurs when a reasonable person in the defendant's position would feel free to leave. *Id.*

Here, the evidence showed a reasonable person in Defendant's position would not have felt free to leave. Wirt ordered Defendant from the van, exercising his authority as an officer. When Defendant asked him "numerous" times to get a cigarette from his van, Wirt denied him each time. Wirt also denied Defendant's request to get his coat out of the van, even though Defendant had reason to be cold because it was about 28 degrees outside. Although he concluded that Defendant was not intoxicated, Wirt obtained Defendant's driver's license and proceeded to run a warrant check while Defendant continued to remain outside his van in the cold. After obtaining Defendant's consent, Wirt then handcuffed him and placed him in the patrol car. These circumstances amount to a show of official authority such that a reasonable person would not have felt free to leave. In addition, Wirt testified that Defendant was not free to leave the scene.

Finally, the State contends that even if Defendant was unreasonably seized, the search of the van was warranted by Defendant's voluntary consent to the search. The trial court also appeared to rely on this contention in denying the motion to suppress. The trial court made no findings of fact. However, in its statement at the motion to suppress hearing, the trial court did not address whether Defendant was unreasonably seized, but instead relied on Defendant's consent to the search. The court further stated that no search would

have been permissible up and until the time Defendant consented to the search. In finding the consent voluntary, the court explicitly stated that Defendant offered no evidence to show any coercion or involuntary consent. However, the trial court's conclusion was in error. Defendant does not have the burden of proof at trial. Rather, the State has the burden of proving Defendant's consent was voluntary. Section 542.296. This burden is placed on the State because warrantless searches are presumptively unreasonable. *Milliorn*, 794 S.W.2d at 184. In addition, the court's finding is insufficient because the court never addressed whether Defendant's consent could have been tainted by his illegal detention.

In determining whether the evidence should be excluded as fruit of the poisonous tree or if Defendant's consent validates the search, the government has the dual requirement of showing (1) the consent was voluntary and (2) whether it has "sufficient independence from the prior illegality to purge the taint of that illegality." *State v. Miller*, 894 S.W.2d 649, 655 (Mo. banc 1995). Consent is invalid if it is the product of duress or coercion, either express or implied. *Woolfolk*, 3 S.W.3d at 831. Voluntariness of consent is determined by looking at the totality of the circumstances and assessing whether an objective observer would conclude the person made a free and unconstrained choice to consent. *State v. Leavitt*, 993 S.W.2d 557, 563 (Mo.App. W.D. 1999). Again, the focus here is on whether the defendant would feel free to leave. *Woolfolk*, 3 S.W.3d at 831.

Here, the evidence presented by the State showed Defendant's consent was not voluntary. As discussed above, a reasonable person in Defendant's position would not have felt free to leave. Instead, Defendant was merely submitting to a claim of lawful authority, which does not satisfy the State's burden of proving Defendant's consent was voluntary. *Royer*, 460 U.S. at 497, 103 S.Ct. at 1324; *Leavitt*, 993 S.W.2d at 563.

In addition, any consent was tainted by Defendant's illegal detention. In determining whether to suppress evidence obtained through a voluntary consent to search given after an illegal seizure, we address three factors: (1) the temporal proximity of the illegality and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Miller*, 894 S.W.2d at 655; *See also, Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975).

Here, the factors weigh against a finding of attenuation. Wirt obtained Defendant's consent within 2–3 minutes of illegally detaining him. He did not advise Defendant that he had the right to refuse to consent. No intervening circumstances existed. Moreover, the actions taken by the police in this case border on flagrant. Under the circumstances presented, we find Defendant's consent tainted by the illegal seizure. *See, Id.* at 656.

Therefore, we grant Defendant's first point. The trial court erred in denying Defendant's motion to suppress and should have excluded State's exhibits 1 through 25. As a consequence of our finding, we do not consider his remaining points on appeal. Without the evidence located in the van, there is insufficient evidence to convict Defendant of any of the charges. By reason of the overwhelming evidence in favor of Defendant, this Court will not remand for another suppression hearing and/or new trial. *See, State v. Davis*, 985 S.W.2d 876 (Mo.App. E.D.1998). We reverse Defendant's convictions and order him discharged. *See, Id.* at 657; *Woolfolk*, 3 S.W.3d at 832–33; *Slavin*, 944 S.W.2d at 321; *Rodriguez*, 904 S.W.2d at 538.

Reversed.

MARY RHODES RUSSELL, C.J., and LAWRENCE G. CRAHAN, J., concur.