**STATE of Missouri, Respondent,**

v.

**Travis BERRY, Appellant.**

**No. ED 77851.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 31, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 6, 2001.

Application for Transfer Denied
Oct. 23, 2001.

Craig Johnston, Assistant State Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Stacy L. Anderson, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY M. GAERTNER, Sr., Presiding Judge.

Appellant, Travis Berry ("appellant") appeals from the judgment of the Circuit Court of Audrain County convicting him of possession of a controlled substance with the intent to distribute, in violation of Sec-

tion 195.211, RSMo (1994)[1]. Appellant challenges the denial of his motion to suppress and the sufficiency of the evidence to support his conviction. We affirm.

Appellant was charged with possession of cocaine with intent to distribute on November 15, 1999. Appellant filed a motion to suppress the evidence, alleging his rights were violated under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 15 of the Missouri Constitution, in that the evidence was the result of an unreasonable search and seizure. The trial court held a hearing on Appellant's motion to suppress on March 22, 2000. The following evidence was adduced at that hearing.

At 11:21 a.m. on September 20, 1999, Franca Ancell, a dispatcher with the Audrain County Sheriff's Department, received an anonymous telephone call from a woman. The caller stated that appellant left Mexico, Missouri around 10:00 a.m. and was en route to Kansas City to pick up a large quantity of cocaine. According to the caller, appellant was due in Kansas City about 12:00 or 12:30, and would return to Mexico before dark. The caller also stated that appellant would be driving a white Cadillac with "fancy" wheels and a "temp tag" in the left rear window. Ms. Ancell recorded and logged the call, then placed a note of the call in Deputy Wes Ancell's box.

At 1:00 p.m. on September 20, 1999, Ms. Ancell received another anonymous call. Ms. Ancell testified that the caller was the same person that had called earlier in the day. The caller stated that she had been mistaken about the date, and that all information given earlier would be for the next day. The information was then given to Deputy Ancell.

Deputy Ancell drove by appellant's residence at approximately 10:00 a.m. on September 21, 1999. Deputy Ancell did not see a vehicle parked at appellant's residence. Around noon on September 21, Audrain County Sheriff's Department Dispatcher Lena Rose received an anonymous phone call from a woman. The caller stated she had called the Sheriff's Department the day before with information concerning appellant. The caller further stated that appellant would be returning to Mexico around 3:00 or 4:00 p.m. that afternoon, and that he would be driving a white Cadillac. Ms. Rose then informed Deputy Ancell of the phone call.

At 3:00 p.m. on September 21, 1999, Deputy Ancell, Audrain County Sheriff's Deputy Dan Johnson and Missouri State Highway Patrol Trooper Phil Davis set up surveillance of northbound vehicles on Highway 54, just south of Mexico. Deputy Ancell stated this location was used because it was the most likely route appellant would take from Kansas City to Mexico. At 4:22 p.m. Deputy Ancell observed a vehicle that matched the caller's description of appellant's vehicle. Deputy Ancell testified that he recognized appellant as the driver because he had previous drug intelligence that appellant was involved in the sale of drugs and appellant had prior arrests and convictions for selling drugs. Appellant was the driver and Stacy Owens was a passenger in the vehicle.

Deputy Ancell initiated a traffic stop on the vehicle based on the anonymous tips. Deputy Ancell explained to appellant that he was stopped because he was suspected of having cocaine based on information received from an anonymous tip. Appellant denied having any drugs and informed Deputy Ancell he was welcome to search the car. Appellant and Mr. Owens both told Deputy Ancell that Mr. Owens was in

1. All further statutory references are to RSMo (1994) unless otherwise noted.

appellant's car because Mr. Owens's car had broken down and appellant agreed to drive him to Mexico. Appellant, however, claimed he came across Mr. Owens by accident on the highway, while Mr. Owens claimed he called and asked appellant to pick him up.

Appellant told Deputy Ancell that he owned the car, then gave the officers both verbal and written consent to search the car.[2] Deputy Johnson testified that appellant was very calm when Deputy Ancell inspected the driver's compartment of the vehicle, but paid close attention when Deputy Ancell searched the trunk. Deputy Ancell noticed that most of the mounting screws were missing from one of the speakers in the trunk. Deputy Ancell then removed the remaining screws and found four individual bags of what appeared to be cocaine in the speaker box. Deputy Johnson testified that appellant uttered a profanity when he saw Deputy Ancell remove the bags from the speaker box. Deputy Ancell also seized a total of $279.99 from appellant's pocket. Tests revealed the bags contained a total of 124.3 grams of cocaine. Paperwork in the car showed that appellant had recently purchased the car. Appellant claimed he had bought the speakers from someone in Centralia.

Appellant filed a motion to suppress the evidence pursuant to Section 542.296. The trial court overruled the motion to suppress stating the stop was proper because there was reasonable suspicion to stop appellant, the stop was brief, and although the officers did not corroborate the time appellant left Mexico on the morning September 21st, they did corroborate all the other information they had. A bench trial immediately followed. The parties stipulated to the testimony adduced at the suppression hearing, except as to evidence of appellant's prior convictions or reputation. The trial court found appellant guilty of possession of a controlled substance with intent to distribute, and appellant was sentenced to twenty years' imprisonment without probation or parole. This appeal follows.

Appellant raises two points on appeal. Appellant first argues the trial court erred in denying his motion to suppress the cocaine found in the vehicle as the illegal fruit of an unreasonable search and seizure. Appellant then challenges the sufficiency of the evidence to support his conviction.

■■■■ The State has the burden of going forward with the evidence and the risk of nonpersuasion to show by a preponderance of the evidence that a motion to suppress should be overruled. Section 542.296.6; *State v. Weddle*, 18 S.W.3d 389, 391 (Mo.App. E.D.2000). Upon review of a motion to suppress, we examine the record made at the motion to suppress hearing and the trial record. *Id.* We review the facts in the light most favorable to the order challenged on appeal. *Id.* We review questions of law *de novo*, but give deference to the trial court's factual findings and credibility determinations, reviewing only to determine if they are clearly erroneous. *Id.* at 391, 392. "However, the question of whether the historical facts as found by the trial court add up to reasonable suspicion requires *de novo* review." *Id.* at 392.

■■■■ The Fourth Amendment of the United States Constitution protects the people against unreasonable search and seizures. Generally, a search or seizure is allowed only if the police have probable

**2.** The verbal consent was obtained about five minutes after the stop, and the written consent was obtained about thirteen minutes after the stop.

cause to believe the person has committed or is committing a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The Fourth Amendment, however, allows a *Terry* stop, which is a minimally intrusive form of seizure that is lawful if the police officer has a reasonable suspicion supported by articulable facts that the individuals stopped are engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is a less demanding standard and can arise from less reliable information than probable cause. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Reasonable suspicion is determined by looking at the totality of the circumstances to determine if the content of the information possessed by the police and its degree of reliability is sufficient to create a "reasonable suspicion" of criminal activity. *Id.*

■ "An anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Id.* at 329, 110 S.Ct. 2412. However, if the police corroborate the anonymous tip it may exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop". *Id.* at 327, 110 S.Ct. 2412.

The question presented in this case is whether the police did enough to corroborate the anonymous tip for it to exhibit sufficient reliability to provide reasonable suspicion to stop the appellant's vehicle. Appellant argues the tip leading to his stop and subsequent arrest came from an anonymous source and lacked the required indicia of reliability to provide reasonable suspicion for the search and seizure. Appellant relies on *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), in which the Supreme Court recently addressed the issue of anonymous tips. In that case, the Miami Dade police received an anonymous tip that "a young

black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* at 268, 120 S.Ct. 1375. Two officers responded to the tip and found three black males standing at the bus stop. *Id.* One of the three, J.L., was wearing a plaid shirt. *Id.* The police had no reason, apart from the tip, to suspect any of the three of illegal conduct. *Id.* One of the police officers approached J.L., told him to put his hands up, frisked him, and seized a gun from him. *Id.*

The Supreme Court held that the anonymous tip, without more, was not sufficient, to justify the police officer's stop and frisk of J.L. *Id.* at 271, 120 S.Ct.1375. The Court stated that the tip did not provide the required indicia of reliability because "the anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." *Id.* Furthermore, the Court stated that a tip must be "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.*

Appellant also relies on *State v. Miller,* 894 S.W.2d 649 (Mo.banc 1995). In *Miller,* one police officer informed another officer that a red Nissan, owned by Ramona Tope (hereinafter "Tope"), with a particular license plate number, would be transporting controlled substances in the vicinity of the Rainbow Village Trailer Court. *Id.* at 650. It was not clear how the first officer received the information he relayed to the second officer. *Id.* The officers then met near Rainbow Village, and stopped a vehicle that matched the description of Tope's Nissan. *Id.* Tope was the driver and Miller was a passenger in the car. *Id.* at 650, 651.

One officer approached the driver's side of the vehicle, asked Tope to exit the vehicle, explained to her the reason for the stop, and asked Tope for her consent to

search the car. *Id.* at 650. Another officer approached the passenger side of the vehicle, explained to Miller that they were going to search the car for drugs, and asked for identification. *Id.* at 651. Miller did not respond to the initial request for identification, became agitated, and kept asking the officer what was going on. *Id.* The officer then asked Miller to step out of the car. *Id.* Miller acted like he did not hear the request, then placed his hand in his pocket for 15 to 20 seconds until he finally stepped out of the car. *Id.* The officer eventually retrieved a small yellow bowl containing cocaine residue from Miller's pocket. *Id.*

Miller filed a motion to suppress the cocaine and several post-arrest statements. *Id.* The trial court denied Miller's motion to suppress, but the Missouri Supreme Court reversed, holding that the stop was illegal and the subsequent search was not sufficiently attenuated to purge the initial taint of illegality. *Id.* at 650. The Court stated that the information failed to show a special familiarity with the affairs of the object of the tip. *Id.* at 654. The information did not rise to the level of reasonable suspicion because it "merely accurately described a vehicle that might be located in a particular area" and did not "identify who would be in the vehicle, allow for corroboration of a travel route, or give an exact location for the vehicle." *Id.*

The State argues this case is more in line with *Alabama v. White,* which the Supreme Court called a "close case." *White,* 496 U.S. at 332, 110 S.Ct. 2412. We agree. In *White,* the Montgomery police department received an anonymous tip that White would be leaving a specific apartment building at a particular time in a brown Plymouth station wagon, that she would travel to a specific hotel located about four miles from the apartment, and that she would be carrying about an ounce

of cocaine inside a brown attaché case. *Id.* at 327, 110 S.Ct. 2412. The police immediately proceeded to the named apartment building, saw a vehicle matching the caller's description, observed White as she left the building and entered the vehicle, and followed her along the most direct route to the motel, stopping her vehicle just short of the motel. *Id.* After conducting a consensual search, the police found marijuana in a brown attaché case and cocaine in White's purse. *Id.*

The Court held that the stop did not violate the Fourth Amendment because the police had sufficiently corroborated the tip to furnish reasonable suspicion that White was engaged in criminal activity. *Id.* at 331, 110 S.Ct. 2412. The Court noted that the police did not corroborate every detail in the tip, such as the name of the woman leaving the building or the precise apartment from which she left; but the police did corroborate that a woman left the particular apartment building and got into the particular vehicle described by the caller. *Id.* The Court also noted that White's destination was sufficiently corroborated even though the police stopped her just short of the named hotel because she drove the most direct route to the named hotel. *Id.* "What was important was the caller's ability to predict respondent's future behavior because it demonstrated inside information—a special familiarity with respondent's affairs." *Id.* at 332, 110 S.Ct. 2412.

■ Like *White,* this is a close case. Appellant argues the tip was not reliable and the police did not sufficiently corroborate the tip for it to rise to the level of reasonable suspicion. We disagree. The tipster called the Audrain County Sheriff's Department three times, giving detailed information concerning appellant with each call. The caller identified the approximate time appellant was leaving Mex-

ico, arriving in Kansas City, and returning to Mexico. The caller also stated appellant's purpose of going to Kansas City and accurately described appellant's vehicle. The caller provided the police with predictive information that allowed the police to test the caller's knowledge and credibility. The police corroborated the information prior to stopping appellant by waiting on the most direct route from Kansas City to Mexico around the time given in the call, and confirming appellant was in the described vehicle.

Unlike *Florida v. J.L,* the caller in this case did give the police predictive information about appellant. In *Florida v. J.L.,* the caller merely described a subject's readily observable location and appearance. In the case at bar, the caller gave detailed predictive information specifically naming appellant and describing appellant's destination, time frame, vehicle, and criminal activity.

We find appellant's argument that the police did not corroborate enough information in the tip because they did not confirm the time appellant left his home on September 21, 1999 unpersuasive. The police, like the police in *White,* did sufficiently corroborate the tip, even though not every detail was corroborated. In *White,* the police did corroborate that a woman left the specific apartment building, entered the specific car, and then proceeded to drive towards the named hotel. *White,* 496 U.S. at 327, 110 S.Ct. 2412. The police did not confirm the identity of the woman or the precise apartment from which she left. In the case at bar, the police did confirm appellant was driving the most direct route from Kansas City to Mexico in the approximate time frame given and in the described car. The police did not confirm the time or the route appellant took when he left Mexico in the morning. We find the police did sufficiently corroborate

the tip for it to rise to reasonable suspicion. Point denied.

Appellant's second point on appeal challenges the sufficiency of the evidence to support his conviction. Appellant argues that the State did not prove beyond a reasonable doubt that appellant consciously exercised dominion and control over the cocaine or that he knew of the existence of the cocaine. We find the State did present sufficient evidence to support appellant's conviction.

■ When reviewing the sufficiency of the evidence, we review all evidence and inferences reasonably drawn from the evidence in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v. Grim,* 854 S.W.2d 403, 405 (Mo.banc 1993). Review is limited to determine whether the evidence was sufficient for reasonable persons to find the defendant guilty as charged beyond a reasonable doubt. *Id.*

■ To sustain a conviction for possession of a controlled substance with or without intent to distribute, the State must prove: 1) conscious and intentional possession of the substance, either actual or constructive, and 2) awareness of the presence and nature of this substance. *State v. Shinn,* 921 S.W.2d 70, 72 (Mo.App. E.D. 1996). The State may show possession by actual, physical possession of a substance, or by constructive possession using circumstantial evidence. *Id.* Circumstantial evidence to show constructive possession is sufficient to support a conviction if other facts support an inference that the defendant had knowledge of the presence of the substances. *Id.* Furthermore, the state must introduce some circumstance the defendant knew of the presence of the drugs and the drugs were under his control. *Id.* "Joint control over the area where the drugs were found will not preclude a showing of control, so long as further evidence

connects the defendant with the illegal substances." *Id.*

In *Shinn,* the defendant was a passenger in a car stopped by the Missouri State Highway Patrol for speeding. *Id.* As the trooper approached the vehicle, he observed the driver and the defendant bending forward "as if to hide something." *Id.* The trooper noticed that the defendant appeared nervous. *Id.* The trooper obtained the driver's permission to search the car. *Id.* The trooper found cocaine and drug paraphernalia under the floor mat on the passenger side. *Id.* The defendant argued on appeal that the state failed to introduce sufficient evidence to support his conviction for possession of a controlled substance. *Id.* The court affirmed his conviction, stating that although defendant did not own the car, he and the driver had been in possession of the car most of the day. *Id.* The court noted that the cocaine and drug paraphernalia were found under the floor mat at the defendant's feet, an area where he had superior access, which is an incriminating fact. *Id.* The court further noted that the defendant was visibly nervous, a condition that supports an inference of awareness of a controlled substance. *Id.* Finally, the court found significant the defendant's actions in attempting to hide something under the seat as implying a consciousness of guilt. *Id.* Based on these factors, the court concluded that the evidence was sufficient to support defendant's conviction. *Id.*

■ We find there was sufficient evidence to support appellant's conviction of possession of a controlled substance with intent to distribute. First, and most significantly, appellant owned the vehicle in question. While there was a passenger in appellant's vehicle, there was no evidence introduced that Mr. Owens, nor anyone other than the appellant, had access to or control of the trunk. As the owner of the

vehicle, the appellant clearly had superior access to the trunk than anyone else at the time of the stop.

Further, Deputy Johnson testified he was standing next to appellant while Deputy Ancell searched his vehicle. Deputy Johnson stated that while Deputy Ancell searched the driver's compartment of the vehicle, appellant "didn't seem to be too concerned with him searching the vehicle." But when Deputy Ancell searched the trunk, appellant acted curious and paid very close attention to Deputy Ancell. This change in appellant's behavior is similar to visual nervousness. Nervousness is a condition that supports an inference of awareness of a controlled substance. *Id.* Visible nervousness is one incriminating fact that will support a conviction if consistent with the totality of the circumstances, even though nervousness is not sufficient alone. *Id.*

Finally, Deputy Johnson testified that appellant stated a profanity when Deputy Ancell pulled the bags out of the speaker box. As with appellant's nervousness, Appellant's profane utterance is not enough alone to support a conviction, but may be considered in the totality of the circumstances to support appellant's conviction.

Appellant argues, however, that *State v. Bowyer,* 693 S.W.2d 845 (Mo.App. W.D. 1985), and *State v. Mercado,* 887 S.W.2d 688 (Mo.App. S.D.1994), are controlling. We disagree. In *Bowyer,* the defendant was stopped by a Highway Patrol trooper for speeding. *Bowyer,* 693 S.W.2d at 846. The trooper observed marijuana paraphernalia, searched the vehicle and found marijuana. *Id.* The defendant's ex-wife testified that she was a passenger in the car, the defendant had not been in the car for six months, the marijuana belonged to her brother, and that the defendant was not aware that the marijuana was in the vehicle. *Id.* The court held the evidence was

not sufficient to support defendant's conviction of possession of marijuana. *Id.* at 847. The court reasoned that the mere presence of drug paraphernalia in the vehicle could not be used to impute knowledge and possession of the marijuana to the defendant. *Id.* at 849.

In *Mercado,* the defendant was a passenger in a van stopped by a police officer for following another vehicle too closely. *Mercado,* 887 S.W.2d at 689. After obtaining permission to search the van, the officer found marijuana taped to the inside of the wall panels of the van. *Id.* at 690. The court held these facts were not sufficient to support a conviction because the only direct evidence connecting the defendant with the drugs is that he was a passenger in the vehicle and had been assisting the owner in driving the vehicle. *Id.*

Both *Bowyer* and *Mercado* found insufficient evidence to support a conviction because of a lack of evidence connecting the defendants to the drugs found in the vehicles in which they were passengers. In both cases, there was no evidence beyond the defendants' presence as passengers in the vehicles stopped to connect them to the drugs found in the vehicles.

Unlike *Bowyer* and *Mercado,* there was sufficient evidence to connect appellant to the drugs found in his vehicle. As stated, appellant was the owner of the vehicle; appellant had superior access to all others to the trunk of his car; appellant's behavior changed when Deputy Ancell moved his search from the driver's compartment to the trunk; and appellant uttered a profanity when Deputy Ancell removed the bags from the speaker box in the trunk. *Bowyer* and *Mercado* are not controlling because there was sufficient evidence to connect appellant to the cocaine found in his vehicle. Therefore there was sufficient evidence to support appellant's conviction of

possession of a controlled substance with intent to distribute. Point denied.

Based on the foregoing, we affirm.

LAWRENCE G. CRAHAN, J., concurs.

GEORGE W. DRAPER III, J., dissents in separate opinion.

DRAPER, Judge, dissenting..

While I would agree with the majority's discussion of the holdings in *Alabama v. White, Florida v. J.L.,* and *State v. Miller, supra,* I respectfully disagree with the majority's application of those cases to the instant case. I find the *J.L.* Court's line of reasoning more persuasive in this case, and therefore, I respectfully dissent from the majority opinion and would reverse the judgment of the trial court and remand the cause.

An anonymous tip by itself seldom, if ever, produces reasonable suspicion that a person has committed a crime warranting a *Terry* stop. *State v. Weddle,* 18 S.W.3d 389, 393 (Mo.App. E.D.2000). *See also, Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). Moreover, an anonymous tip rarely demonstrates the informant's basis of knowledge or veracity. *Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000). Although a detention and search and seizure generally is unlawful if conducted solely on the basis of an anonymous tip, an anonymous tip need not be ignored in determining whether reasonable suspicion exists. *State v. Deck,* 994 S.W.2d 527, 536 (Mo. banc 1999).

Police may consider the anonymous tip if it is in conjunction with other independent corroborative evidence suggestive of criminal activity. *Id.* At issue is the reasonable suspicion which requires that a tip be reliable in its assertion of illegality, not just its tendency to identify a determinate

person. *J.L.*, 529 U.S. at 272, 120 S.Ct. at 1379. Further, while having knowledge about a person's future movements indicates some familiarity with that person's affairs, it does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband. *J.L.*, 529 U.S. at 272, 120 S.Ct. at 1379.

The *J.L.* Court held that an anonymous tip indicating a person was carrying a gun, without more, was insufficient to justify a *Terry* stop. *J.L.*, 529 U.S. at 268, 120 S.Ct. at 1377. The Court noted that the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. *Id.*, 529 U.S. at 270, 120 S.Ct. at 1378. The Court distinguished this case from "the moderate indicia of reliability" present in *White*, stating the anonymous call provided no predictive information and therefore, left the police without means to test the informant's knowledge or credibility. *Id.*, 529 U.S. at 271, 120 S.Ct. at 1379. Conceding that an accurate description of a subject's readily observable location and appearance is reliable in a limited sense, the Court stated that such a tip does not show that the informant has knowledge of concealed criminal activity, which is required to meet the reasonable suspicion standard. *Id.* The Court stressed that the only information the police had was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun, nor supplied any basis for believing he had inside information about J.L. *Id.*

In the instant case, as in *J.L.*, the police made no personal observations and had no reason, aside from the anonymous tip, to suspect Berry of any illegal activity at the time of the *Terry* stop. Deputy Ancell acknowledged he did not see Berry commit any traffic violation, but merely stopped the car based upon the information received from the anonymous caller. The anonymous caller gave no information about her relationship with Berry nor did she say how she knew the information. The police corroborated some information provided by the anonymous caller, however, all of the corroborated details were easily obtainable facts and conditions existing at the time of the tip, similar to the circumstances in *J.L.*. Providing the police with a description of Berry's car, the license plate, and a probable route at a particular time of day is insufficient to rise to the level of reasonable suspicion. *State v. Miller*, 894 S.W.2d 649, 654 (Mo. banc 1995).

The majority stresses the fact that the anonymous caller contacted the police station on three separate occasions with detailed predictive information, such as specifically naming Berry and describing his destination, time frame, vehicle, and criminal activity. Presumptively, the three separate phone calls indicated she had a special familiarity with Berry's affairs, specifically as to his destination and time frame, which differed each time she called. However, despite the caller's conflicting and changing information, the police still failed to investigate adequately this "detailed predictive information" upon which the majority relies on.

Recognizing that additional investigative work could have demonstrated whether the anonymous caller had a special familiarity with Berry's affairs, the additional work was lacking in this case. As stated earlier there was no investigation regarding the caller's relationship or basis of knowledge as to Berry's activities. Furthermore, the police did not take steps to corroborate the other information, such as the destination and time frame, which could have been easily verified. Deputy

Ancell testified that he did not see Berry leave his residence at the time and day indicated. There were no officers stationed along any of the most likely routes to Kansas City from Mexico to see if Berry was traveling along that route. Moreover, Deputy Ancell conceded that he did not know if Berry in fact had traveled to Kansas City that day.

Not only was the additional work lacking, the investigative work performed by the police was not sufficient to corroborate an anonymous tip under the dictates of *State v. Miller, supra.* They merely corroborated the description of Berry's car, the license plate, and a probable route at a particular time of day, which is insufficient to rise to the level of reasonable suspicion. Moreover, simply because Berry had a previous drug conviction, and Deputy Ancell testified that he had some unelaborated "intelligence" on Berry, these facts do not corroborate that he was engaged in *current* drug activity. *See, Commonwealth v. Wimbush,* 561 Pa. 368, 750 A.2d 807 (2000)(holding an anonymous tip insufficient to support reasonable suspicion based on the fact that defendant was suspected of drug activity in his community failed to corroborate he currently was engaged in drug related activity and surveillance failed to uncover any independent information that defendant was engaged in any criminal activity).

In the absence of sufficient corroboration, and based on the totality of the circumstances, I would hold the police did not have reasonable suspicion based solely on the anonymous tip to justify a *Terry* stop of Berry's car. Therefore, the stop was illegal and the motion to suppress should have been granted. Finding Berry's first point dispositive, I would not reach his second point challenging the sufficiency of the evidence to support his conviction and would reverse and remand for furthering proceedings.