**STATE of Missouri, Respondent,**

v.

**Caroline E. BERGMANN, Appellant.**

No. ED 82239.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 26, 2003.

■

**In the Estate of Hilda SCHULZE,
Deceased.**

No. ED 82250.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 26, 2003.

Thomas B. Burkemper, Troy, MO, for appellant.

Joel D. Brett, St. Charles, MO, for respondents.

Before GARY M. GAERTNER, SR., P.J., ROBERT G. DOWD, JR., J., and MARY R. RUSSELL, J.

*ORDER*

Lawrence O. Willbrand, St. Louis, MO, for appellant.

John M. Morris III, Anne Edgington (co-counsel), Nicole Gorovsky (co-counsel), Jefferson City, MO, for respondent.

## OPINION

GLENN A. NORTON, Presiding Judge.

Caroline Bergmann appeals her convictions for possession of controlled substances with the intent to deliver, claiming that the trial court erred in refusing to suppress evidence seized after her vehicle was stopped. The State concedes, and we agree, that the stop was illegal and the evidence seized therefrom should have been suppressed.

### I. BACKGROUND

The facts are undisputed. The police received an anonymous call to respond to a disturbance at a motel. The caller stated that one of the parties from the disturbance was in a "dark colored" SUV parked near Room 111. When an officer pulled into the hotel parking lot, he saw a dark grey Jeep Cherokee driving in front of the 100–block of rooms. The officer stopped the car; Bergmann was driving. She gave the officer her license and explained that she had just found her boyfriend in a hotel room with another woman, that they had had a verbal argument and that she was leaving. While talking to Bergmann, the officer observed marijuana in a purse on the front passenger seat. Bergmann was arrested, and a further search of the car

revealed more marijuana, methamphetamine and paraphernalia. Bergmann apologized and told the officers the marijuana in her purse was for personal use and the other items were to sell.

Bergmann's motion to suppress the drugs and paraphernalia as fruits of an illegal stop and search was denied. The parties submitted the case to the trial court on the police reports and testimony from the suppression hearing. Bergmann's objection to the officer's statements about what he observed, found and seized as a result of the stop was overruled. The court found Bergmann guilty of possession with intent to deliver marijuana and possession with intent to deliver methamphetamine.

## II. DISCUSSION

Ordinarily, the police must have probable cause to believe that a person has committed or is about to commit a crime to conduct a lawful search or seizure under the Fourth Amendment of the United States Constitution. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). But a minimally intrusive form of seizure—the so-called investigative *Terry* stop—is permissible if the police officer has a reasonable suspicion supported by articulable facts that the person stopped is engaged in criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Police are allowed to conduct *Terry* stops of moving vehicles upon a reasonable suspicion that the occupants are involved in criminal activity." *State v. Miller,* 894 S.W.2d 649, 652 (Mo. banc 1995) (citing *United States v. Brignoni–Ponce,* 422 U.S. 873, 882, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). Whether the facts amount to reasonable suspicion is a question of law that we review *de novo. State v. Berry,* 54 S.W.3d 668, 672 (Mo.App. E.D.2001).

The police officer performing the *Terry* stop need not have personally observed the facts amounting to reasonable suspicion. *See Miller,* 894 S.W.2d at 652. But the information the officer acts upon must be reliable:

Reasonable suspicion is determined by looking at the totality of the circumstances to determine if the content of the information possessed by the police and its degree of reliability is sufficient to create a "reasonable suspicion" of criminal activity.

*Berry,* 54 S.W.3d at 673 (citing *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). The information the officer acted upon in this case was obtained from an unidentified informant. An anonymous tip, without more, seldom demonstrates the reliability of the information provided; but if the police corroborate the tip, it may exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *White,* 496 U.S. at 327, 110 S.Ct. 2412.

Here, the tip merely provided an accurate description of the car and its location and an accusation that the occupant of the car was involved in an unspecified "disturbance." While the officer confirmed the description of the car when he arrived at the hotel, he observed nothing to corroborate that the person driving that car had been involved in criminal activity. This case is similar to the most recent Supreme Court case discussing the reliability of anonymous tips to justify *Terry* stops. *Florida v. J.L.,* 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

In *J.L.,* the police received an anonymous tip that a young African–American man in a plaid shirt standing at a bus stop was carrying a gun. *Id.* at 268, 120 S.Ct. 1375. When the police arrived at the bus stop, they saw three African–American

men; one, the defendant, was wearing a plaid shirt. *Id.* The police had no reason, apart from the tip, to suspect any of these men of illegal activity: the police saw no gun, and the defendant made no threatening or unusual movements. *Id.* The officers frisked the defendant and found a gun. *Id.* The Supreme Court held that the tip did not provide the required indicia of reliability because it offered no predictive information with which the police could test the informant's knowledge and credibility. *Id.* at 271, 120 S.Ct. 1375. Moreover, the tip failed to provide the police with any reliable information about the defendant's involvement in criminal activity:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster meant to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Id.* at 272, 120 S.Ct. 1375.

Likewise, in this case, the tip provided no predictive information other than the description and location of the car. The informant's allegation that Bergmann was involved in some disturbance turned out to be true, as we know from the officer's conversation with Bergmann after he stopped her car. But that does not suggest that *before the stop* the allegation was corroborated or the officer had reasonable suspicion to suspect anyone in the car of unlawful conduct. Reasonableness must be measured by what the officer knew before the stop. *See id.* at 271, 120 S.Ct. 1375.

Whether or not the tip was reliable in its tendency to identify Bergmann, it failed to provide reliable information about her involvement in any illegal activity. Because the officer lacked reasonable suspicion to stop Bergmann's vehicle, the stop was illegal and the evidence seized as a result thereof should have been suppressed. Bergmann's point one is granted; because it is dispositive, we need not consider her other point on appeal.

### III. CONCLUSION

■ The judgment is reversed, and the case is remanded for disposition consistent with this opinion.[1]

KATHIANNE KNAUP CRANE, J. and MARY K. HOFF, J. concurring.

---

1. While we are unable to determine whether retrial is appropriate from the record before this Court, suppression of this evidence does not preclude retrial if there is other evidence that the State can present to make a submissible case. *See State v. Kinkead,* 983 S.W.2d 518, 519 (Mo. banc 1998).