**STATE of Missouri, Appellant,**

v.

**Rodger L. WATKINS, Respondent.**

**No. ED 80514.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 30, 2002.

Scott A. Fulford, Union, MO, for appellant.

Lisa L. Preddy, Union, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The State appeals from the trial court's order suppressing physical evidence seized from a defendant in conjunction with a traffic stop. The trial court granted defendant's motion to suppress because it found that the investigatory traffic stop had terminated prior to the trooper's request to search. Finding there is insufficient evidence that the traffic stop had concluded, we reverse and remand for further proceedings.

## FACTS

The following facts were developed at the hearing on the motion to suppress, which consisted solely of Trooper Burckhardt's testimony. Defendant Watkins was stopped by Trooper Burckhardt after the trooper observed defendant's vehicle cross the center line of the roadway. Upon request, defendant provided the trooper with his driver's license and accompanied the trooper back to the patrol vehicle, while the trooper ran a records check and completed the citation. Trooper Burckhardt testified that during the course of the records check he engaged the defendant in general conversation. Specifically, the testimony reveals the following:

Q (State): And once you were in the vehicle, then describe for the Court the conversation.

A (Trooper): He was very nervous. It was clear he had a very dry mouth; stammered over his words; wouldn't look me in the eye; wasn't very coherent. It was obvious to me there was something on his mind.

Q: And I believe you said before you were running a records check during this conversation?

A: Yes.

Q: Upon making these observations and during the course of this records check, did you ask the defendant any questions?

A: Yes, I did. Asked him—as I said, making general conversation, asking him about other people in the area. And I asked him if he had anything illegal on him.

Q: And how did he answer that question?

A: He said no.

Q: And did you ask for consent to search his personal vehicle at that time?

A: Yes.

Q: What was his response?

A: Yes, I could search.

Following this exchange, a search revealed a small bag of white powder, alleged to be methamphetamine. Defendant was then placed under arrest, and later charged with the class C felony of possession of a controlled substance, Section 195.202 RSMo.2000. The trial court's order suppressing this evidence is the subject of this appeal.

## DISCUSSION

 Our review of a ruling on a motion to suppress is limited to a determination of whether there is substantial evidence to support the court's decision. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998); *State v. Davis*, 32 S.W.3d 603, 610 (Mo.App. E.D.2000). We will reverse the trial court's ruling only if it is clearly erroneous, that is, if we are left with a definite and firm belief that a mistake has been made. *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990); *State v. Graeler*, 988 S.W.2d 57, 58 (Mo.App. E.D.1999); *State v. Hunter*, 43 S.W.3d 336, 340 (Mo. App. W.D.2001). In reviewing the trial court's order, we consider the facts and reasonable inferences in the light most favorable to the trial court's ruling. *Graeler*, 988 S.W.2d at 58; *State v. Carter*, 955 S.W.2d 548, 560 (Mo. banc 1997).

The State contends the trial court erred in sustaining the motion to suppress because the traffic stop was ongoing, that the trooper's request and defendant's consent were given during the course of a lawful traffic investigation and prior to the completion of the records check, and moreover, that the search was lawful based on voluntary consent.

 The Fourth Amendment is a guarantee against unreasonable searches and seizures. U.S. Const. Amend. IV; *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *State v. Riddle*, 843 S.W.2d 385, 386 (Mo. App. E.D.1992); *State v. Woolfolk*, 3 S.W.3d 823, 828 (Mo.App. W.D.1999). "A routine traffic stop based upon the violation of state traffic laws is a justifiable seizure under the Fourth Amendment." *Woolfolk*, 3 S.W.3d at 828. "The period of lawful seizure for a traffic stop encompasses that time during which the officer may conduct a reasonable investigation of the traffic violation." *State v. Slavin*, 944 S.W.2d 314, 318 (Mo.App. W.D.1997). However, the investigative detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation. *Id.* If a stop extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion of another crime is found during the period of lawful seizure. *Id.; State v. Stevens*, 845 S.W.2d 124, 128 (Mo.App. E.D.1993); *State v. Hyland*, 840 S.W.2d 219, 221 (Mo. banc 1992).

Defendant argues that the detention had exceeded the scope of an ordinary and lawful traffic stop, that the request and consent to search occurred during this unlawful detention and further, that the consent was not freely and voluntarily given. The trial court, in ordering the evidence suppressed, found that the trooper's investigatory stop terminated after defendant denied existence of contraband and prior to the request to search.

Viewing the testimony from the suppression hearing in the light most favorable to the court's ruling, we cannot agree with the trial court's ruling that the investigatory stop had terminated. There simply is insufficient evidence that the records check and the investigation of the traffic violation was complete or that the investigatory stop had terminated at the time the trooper requested the search. For example, there is no evidence to show that the records check had been completed, that the trooper had received information back from dispatch, or that the trooper had processed and issued the citation. *See e.g., Slavin*, 944 S.W.2d at 318 (period of lawful seizure limited to the time required for trooper to process the warning given to the driver). Nor is there evidence that the trooper had returned defendant's license and citation to him, or that defendant was told he could go back to his car. *See e.g., Woolfolk*, 3 S.W.3d at 829 (initial traffic stop completed once the trooper returned driver's documents to him and driver said he had no further questions); *Stevens*, 845 S.W.2d at 128 (time reasonably necessary to effect the initial purpose of the traffic stop had concluded where trooper had completed the registration and license check, returned driver's license, given warning and told driver to go back to his vehicle). Rather, based on the evidence before us, the testimony indicates that the trooper was running a records check during his conversation with the defendant in which he asked for consent to search. As the record check was ongoing, the investigation of the traffic violation had yet to conclude and thus, the investigatory stop had not concluded when the search was requested and consent was given.

As the trial court made no findings as to whether defendant's consent was freely and voluntarily given, we do not reach that issue. Also, any confusion as to whether defendant consented to a search of both his person and his vehicle can be resolved on remand. We reverse and remand to the trial court for further proceedings not inconsistent with this opinion.

SHERRI B. SULLIVAN, P.J., and LAWRENCE G. CRAHAN, J., concur.