**STATE of Missouri, Appellant,**

v.

**Tara A. STOEBE, Respondent.**

**No. WD 76106.**

Missouri Court of Appeals,
Western District.

Aug. 27, 2013.

CYNTHIA L. MARTIN, Judge.

This is an interlocutory appeal by the State, pursuant to section 547.200.1(3),[1] from the trial court's order sustaining Tara Stoebe's ("Stoebe") motion to suppress evidence in a criminal case where Stoebe is charged with possession of a controlled substance. The State contends that the trial court erred because (1) Stoebe was not illegally seized in violation of the Fourth Amendment and gave consent to search her purse during the reasonable investigation of a traffic stop; and (2) regardless of the lawfulness of her seizure, the search of Stoebe's purse did not violate the Fourth Amendment because Stoebe voluntarily consented to the search. Because the State failed to meet its burden to demonstrate that its warrantless search of Stoebe's purse was lawful, we affirm.

**Factual and Procedural History**

Following a traffic stop for a poorly illuminated/dirty license plate, Stoebe's purse was searched, leading to the discovery of Oxycodone prescribed to another person. Stoebe was charged with one count of possession of a controlled substance. The felony complaint charging Stoebe referenced an attached "probable cause statement" signed by Moberly Police Officer Beau Ryun ("Officer Ryun").

Stoebe filed a motion to suppress ("Motion to Suppress") the evidence seized from her purse and statements she made to the police after her arrest as fruits of an illegal search and seizure. The State called Officer Ryun as its sole witness during the suppression hearing.

Officer Ryun testified that on January 25, 2012, he initiated a traffic stop of

Jennifer Rodewald, Jefferson City, MO, for appellant.

Ellen H. Flottman, Columbia, MO, for respondent.

Before Division Three: LISA WHITE HARDWICK, Presiding Judge, MARK D. PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

Stoebe's vehicle because the rear license plate light "was failing to illuminate the registration at a distance of fifty feet or more ... [a]nd the registration was also covered by dirt, which was making it obstructed to where I couldn't view it." Officer Ryun advised Stoebe and Tonya Kitchen ("Kitchen"), Stoebe's passenger, of the reason for the stop and requested their information. Stoebe admitted that there was dirt covering her plate.

Officer Ryun testified that it is his "general practice" to have someone who is acting nervous sit in his patrol car while he checks their information through "MULES"[2] for outstanding warrants. Officer Ryun asked Stoebe to sit in his patrol car because he felt Stoebe was acting nervous. Officer Ryun testified that Stoebe's nervousness made him suspicious. Officer Ryun believed Stoebe's nervousness was not "regular nervousness." Officer Ryun testified that his on-the-job experience had enabled him to:

> [D]etect if someone—just if they're nervous because it's the first time that they've been pulled over by a police officer, or if there's something more to the story. *Ms. Stoebe's demeanor, I could tell that there was obviously something illegal in the vehicle, because later I looked and something illegal was in the vehicle* .... I could tell there was more to her nervousness than just, I'm being pulled over by the police for the first time in my life, and I don't know where my insurance card is.

(Emphasis added).

Stoebe complied with Officer Ryun's request to sit in the patrol car. Officer Ryun testified that "[t]hrough conversation, I asked [Stoebe] if there was anything illegal in the vehicle and she stated there shouldn't be." Officer Ryun then testified that:

> I asked [Stoebe] [for] consent to search the vehicle, and she granted consent to search her purse. But whenever I asked for the vehicle, she wouldn't answer the question directly; she just stated I could search her purse.

Officer Ryun could not recall how many times he asked Stoebe for consent to search her vehicle, but acknowledged "I was trying to get her to answer the specific question. However, she was just saying I could search her purse." Officer Ryun was not asked when his questioning of Stoebe occurred in relation to running her information through MULES.

Officer Ryun testified that after receiving Stoebe's consent to search the purse (which was still in the vehicle), he "exited [his] patrol car and [ ] made contact with [Kitchen]." Officer Ryun asked Stoebe to stand outside his patrol car during this time. Officer Ryun made contact with Kitchen because "I don't search vehicles, or I don't go into vehicles to get items with other people being in the vehicle." Officer Ryun claimed he told Kitchen that he "was going to get [Stoebe's] purse," then noticed that there were two, unmarked open cups in the vehicle. Officer Ryun had no recollection of seeing open containers in the vehicle until he approached Kitchen.

After seeing the open containers, Officer Ryun testified he then obtained Kitchen's consent to search her purse. The search of Kitchen's purse yielded marijuana and methamphetamine smoking pipes. Officer Ryun placed Kitchen under arrest for violation of the Moberly city ordinance banning open containers, and for "possession

---

2. MULES stands for Missouri Uniform Law Enforcement System. *State v. Loyd,* 338 S.W.3d 863 (Mo.App. W.D.2011).

of methamphetamine, and possession of marijuana."

After arresting Kitchen, Officer Ryun located and searched Stoebe's purse. Officer Ryun found an Oxycodone prescription bottle prescribed to Glenn Kitchen in Stoebe's purse. Officer Ryun placed Stoebe "under arrest for being in possession of [Oxycodone]." There is no indication that Stoebe was cited for her poorly illuminated/dirty license plate.

At the police station, Officer Ryun questioned Stoebe about the Oxycodone found in her purse after she was Mirandized.[3] Stoebe told Officer Ryun that the Oxycodone belonged to a family member and that she knew it was illegal to possess another person's prescription pills.

The State introduced no other evidence during the suppression hearing. The State did not introduce Officer Ryun's "probable cause statement" into evidence. In her post-hearing brief, Stoebe argued that the stop of her vehicle became an unreasonable seizure once Officer Ryun completed his investigation of the traffic violation, ran Stoebe's license and registration, and stepped back out of his patrol car; that Officer Ryun lied about obtaining Stoebe's consent to search her purse;[4] and that Officer Ryun lacked probable cause to search Stoebe's vehicle.

On January 29, 2013, the trial court entered its order granting Stoebe's Motion to Suppress. The trial court found, in pertinent part:

The facts developed during the suppression hearing were that, on January 25, 2012, Officer Ryun ... performed a traffic stop on a motor vehicle operated by [Stoebe.] The purported reasons for the stop were a dirty license plate and a defective license plate lamp.

Once the traffic stop was made, Officer Ryun requested [Stoebe] to have a seat in his patrol car while her license and registration were checked. Officer Ryun testified that [Stoebe] was visibly nervous and, among other observations, observed her "carotid artery pulsating in her neck."[5] [Officer] Ryun inquired of [Stoebe] if she had any contraband in the vehicle and subsequently requested consent to search. *According [to Officer] Ryun*, consent was given by [Stoebe] to search her purse, but she evaded or failed to answer whether consent was given for the vehicle. [Officer] Ryun then requested [Stoebe] locate to outside the front of her vehicle. When Officer Ryun was entering the vehicle to retrieve her purse, he noticed reasonable suspicion of the crime of open container. Subsequent investigation, arrests, and finally *a search of the vehicle and [Stoebe's] purse* ensued. Inside [Stoebe's] purse was Oxycodone, a controlled substance....

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

4. Stoebe attached an affidavit to her post-hearing brief averring that she did not consent to a search of her purse. The trial court refused to consider Stoebe's affidavit, noting it was not "testimony" and was thus "inappropriate."

5. There are no references in the transcript to Stoebe's "pulsing carotid artery." The "probable cause statement" attached to the felony complaint does refer to Stoebe's "pulsing carotid artery." However, the probable cause

statement was neither offered nor received in evidence. As disposition of the question has no bearing on our decision, we express no opinion about whether a trial court can rely on a probable cause statement contained in the court file as "evidence" in ruling on a motion to suppress where the statement has not been received in evidence at the suppression hearing. *See State v. Blackman,* 875 S.W.2d 122, 135 (Mo.App. E.D.1994) (To determine whether evidence should be suppressed, we review record at pretrial suppression hearing).

A search or seizure conducted without a warrant is unreasonable unless it falls within an exception. The burden falls on the State to justify a warrantless search or seizure. It is well established that a traffic stop based on a violation is a justifiable seizure. Police are allowed to detain persons for a traffic violation, but only for as long as necessary to complete the investigation and stop. During the traffic stop, police may question a driver about contraband, crimes, and weapons—*so long as it does not prolong the stop.* The only way further detention/seizure is warranted, is if the officer develops a reasonable articulable suspicion that the driver is involved in criminal activity. Once that occurs, an officer has a sufficient basis for escalating the detention/search. The investigation is then refocused towards the new crime.

In this case, at the moment [Stoebe] was seized and in Officer Ryun's patrol car, she was asked about contraband. Officer Ryun noted her carotid artery pulsing.[6] None of the testimony established any relevant basis for this observation. The testimony of [Stoebe's] nervousness, without additional factors, is also fairly irrelevant. This is because Officer Ryun failed to establish that THIS Defendant was more nervous than she should have been for the stop. People react to being stopped by law enforcement differently. For all we know, she could have had a thyroid issue causing her carotid artery to pulse. That is not to say it would never be an indicator, however, it is not likely it would be under these or similar facts. The evidence of criminal activity of open container could have permitted continued seizure and further investigation. However, the time and effort expended during this traffic stop for a dirty unlit license plate was excessive. Further seizure became unreasonable. Further justification became irrelevant.

On the other hand, consent usually negates a warrant requirement. Officer Ryun testified he had consent to search [Stoebe's] purse. However, he could not articulate if [Stoebe] provided or withheld consent of the vehicle search. Assuming that the Court were to believe that consent was given for the purse, it still would be deemed involuntary in light of the circumstances of the continued illegal seizure without more than nervousness. Based on the totality of the circumstances, consent becomes less relevant. The State has failed to meet its burden.

By continuing his investigation in [the] absence of reasonable articulable facts, Officer Ryun violated [Stoebe's] Fourth Amendment rights. The remedy . . . is to grant [Stoebe's] Motion to Suppress.

(Emphasis added.)

The State appeals.

### Standard of Review

 "A trial court's ruling on a motion to suppress may be reversed only if it is clearly erroneous." *State v. Shaon,* 145 S.W.3d 499, 504 (Mo.App. W.D.2004). Our review "is limited to a determination of whether the trial court's ruling is supported by sufficient evidence from the record as a whole." *Id.*

In reviewing a trial court's order on a motion to suppress, this court considers all facts and reasonable inferences in the light most favorable to the challenged order. The appellate court must defer to the trial court's determination as to the credibility of witnesses. This court may not substitute its discretion for that

---

6. See footnote number 5.

of the trial court when reviewing an order suppressing evidence. Nonetheless, this court must consider the ruling in light of the proper application of the precepts of the Fourth Amendment. The ultimate issue of whether the Fourth Amendment was violated is a question of law which this court reviews de novo.

*Id.* (internal citations and quotation marks omitted). "If the trial court's ruling 'is plausible in light of the record viewed in its entirety,' this court 'may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *State v. Kovach,* 839 S.W.2d 303, 307 (Mo.App. S.D.1992) (quoting *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990)). "The trial court was free to disbelieve any of the state's proof, even if uncontradicted." *State v. Foster,* 392 S.W.3d 576, 578 (Mo. App. S.D.2013).

## Analysis

The State raises two points on appeal. First, it claims that the trial court clearly erred in sustaining Stoebe's Motion to Suppress because Stoebe gave consent to search her purse during the reasonable investigation of a traffic stop.[7] Second, it claims that the trial court clearly erred because regardless the lawfulness of her seizure, Stoebe's purse was searched pursuant to Stoebe's voluntary consent.

■■■ "The Fourth Amendment to the United States Constitution guarantees the right of all citizens to be free from unreasonable searches and seizures." *State v. Barks,* 128 S.W.3d 513, 516 (Mo. banc 2004). Enforced pursuant to the exclusionary rule, the protections of the Fourth Amendment have been extended via the Fourteenth Amendment to defendants in state court prosecutions. *State v. Kempa,* 235 S.W.3d 54, 60 (Mo.App. S.D.2007). "'Warrentless searches or seizures are per se unreasonable unless there are special circumstances which excuse compliance with federal and state warrant requirements.'" *Id.* (quoting *State v. Hensley,* 770 S.W.2d 730, 734 (Mo.App. S.D.1989)). *See also Milliorn,* 794 S.W.2d at 184 (holding that warrantless searches are presumptively unreasonable and the burden of placing the search within an exception to the warrant requirement falls on the State).

■■■ Here, there is no dispute that Officer Ryun conducted a warrantless search of Stoebe's purse. Thus, as the trial court correctly noted in its suppression order, "[t]he burden falls on the State to justify [the] warrantless search." To sustain this burden "'[a]t a suppression hearing, the State bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled.'" *State v. West,* 58 S.W.3d 563, 568 (Mo.App. W.D.2001) (citation omitted).[8] In fact, section 542.296.6, addressing motions to suppress, provides:

---

7. At one point in the argument portion of its Brief, the State contends that Stoebe gave consent to search her *vehicle* during the investigation of the traffic stop. We presume this to be an unintended typographical error in that the State's statement of facts, and its point relied on, assert only that Stoebe gave consent to search her purse.

8. Although the State has the burden of production and persuasion to show by a pre-

ponderance of the evidence that defendant's motion to suppress should be overruled, the defendant "'has the initial burden of proving that he is aggrieved by the search and seizure, or stated another way, that he has Fourth Amendment standing to challenge the search and seizure by showing that he has a legitimate expectation of privacy in the place or thing searched.'" *State v. Brown,* 382 S.W.3d 147, 158 (Mo.App. W.D.2012) (quoting *State v. Ramires,* 152 S.W.3d 385, 395

The judge shall receive evidence on any issue of fact necessary to the decision of the motion. The burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled.

The "special circumstance" relied on by the State to legitimize the warrantless search of Stoebe's purse is her purported provision of voluntary consent, whether or not given during the lawful investigation of a traffic stop. Pursuant to section 542.296.6, it was thus incumbent upon the State during the suppression hearing to present evidence, and to persuade the trial court to believe from that evidence: (i) that Stoebe consented to the search of her purse; and (ii) that Stoebe's consent was voluntary.[9]

▬▬▬ The trial court did not find, one way or the other, whether it believed Officer Ryun's testimony[10] that Stoebe consented to a search of her purse, the first of the two essential components of the State's tendered "special circumstance." Ordinarily, that might require us to remand for a credibility determination on the critical issue of whether consent was given.[11] Re-

mand is not necessary here, however, because the trial court found that even "[a]ssuming [it] were to believe that consent was given for the purse, it [ ] would be deemed involuntary." It is the State's burden to establish that *on this record*, the trial court clearly erred in concluding that Stoebe's consent to search her purse was involuntary. The State has not met this burden.

### *The State did not establish that Stoebe consented to a search of her purse during the reasonable investigation of a traffic stop*

▬▬▬ The State presented evidence that Stoebe was stopped to permit investigation of a routine traffic violation. Stoebe does not contend that the initial traffic stop was unlawful.

A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment. Such a seizure, however, *may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation.* Once the investigation of a traffic stop is concluded, the detainee must be allowed to proceed unless specific, articulable facts create an

---

(Mo.App. W.D.2004)). The State does not argue that Stoebe failed to sustain this initial burden.

9. "The language of [section 542.296.6], 'burden of going forward with the evidence and the risk of nonpersuasion,' references the two recognized components of the burden of proof: 'the burden of producing (or going forward with) evidence and the burden of persuasion.'" *Ramires*, 152 S.W.3d at 395 (quoting *Kinzenbaw v. Dir. of Revenue*, 62 S.W.3d 49, 53 (Mo. banc 2001)).

10. Though Officer Ryun's testimony that Stoebe gave consent to search her person was essentially uncontested (except to the extent challenged on cross-examination), the trial court was not required to accept the testimo-

ny as true. *State v. Foster*, 392 S.W.3d 576, 578 (Mo.App. S.D.2013) ("The trial court was free to disbelieve any of the state's proof, even if uncontradicted.").

11. In *State v. Sanders*, 16 S.W.3d 349 (Mo. App. W.D.2000), we reversed and remanded an order suppressing evidence where the trial court noted conflicting evidence on the subject of consent to search, but did not resolve the conflict, electing instead to base its decision to suppress on a need to protect the public's confidence in the workings of law enforcement. *Id.* at 350. We found that without a credibility determination on the issue of consent, the trial court neither had, nor expressed, a proper basis for its ruling. *Id.* at 351.

objectively reasonable suspicion that the individual is involved in criminal activity. *Kempa*, 235 S.W.3d at 60–61 (internal citations and quotation marks omitted) (emphasis added); *see State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004) ("So long as the police are doing no more than they are legally permitted and objectively authorized to do, the resulting stop or arrest is constitutional;" routine traffic stop does not justify indefinite detention).

The trial court concluded that although the initial stop of Stoebe's vehicle was lawful, "the time and effort expended during th[e] traffic stop for a dirty unlit license plate was excessive," rendering "[f]urther seizure ... unreasonable." Though it is unclear at what point in time the trial court believed the investigation of Stoebe's traffic violation became excessive, it is clear that the trial court concluded that consent to search the purse, *if* secured from Stoebe at all, was secured *after* the time necessary for the officer to conduct a reasonable investigation of the traffic violation. We look, therefore, to precedent addressing searches conducted after a traffic stop is (or should reasonably have been) concluded for guidance in assessing whether the trial court's conclusion is clearly erroneous.

In *Granado*, 148 S.W.3d at 311, our Supreme Court held that once the purpose of a traffic stop—to investigate a traffic violation—is completed, the driver of the vehicle must be permitted to "proceed without further questioning unless specific, articulable facts created an objectively reasonable suspicion that the individual was involved in criminal activity." In *Granado*, the Supreme Court found a stop was completed as soon as the driver was given a warning about the traffic violation and was told he was free to go. *Id.* Thus, subsequent questioning of the driver and a canine search of the vehicle following the

driver's refusal of consent to search were held to be in violation of the Fourth Amendment. *Id.*

Similarly, in *State v. Sanchez*, 178 S.W.3d 549, 555 (Mo.App. W.D.2005), this court found a traffic stop ended when an officer expressly told the driver she was free to go. The officer's subsequent re-engaging of the driver, who then refused consent to search leading to a canine search of a vehicle, violated the Fourth Amendment. *Id.* at 555–56.

*Granado* and *Sanchez* involved the *nonconsensual* search of a vehicle after a traffic stop is deemed completed, and thus permitted application of the bright line rule that once a " 'traffic stop is concluded, the detainee *must* be allowed to proceed *unless* specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity.' " *Kempa*, 235 S.W.3d at 61 (citation omitted) (emphasis added). The same bright line rule does not apply, however, to *per se* invalidate *consensual* searches after a traffic stop is completed. In the case of a consensual search, the focus shifts to whether the consent was voluntary, a determination made by assessing whether based on "the totality of the circumstances, [the officer's] conduct would have communicated to a reasonable person that he or she was not free to decline the officer's requests or terminate the encounter." *State v. Vogler*, 297 S.W.3d 116, 120 (Mo. App. S.D.2009).

In *Vogler*, an officer observed the driver of a vehicle turning left without signaling. *Id.* at 117. The driver handed the officer his license and proof of insurance. *Id.* The driver was advised that he would not be given a ticket for the traffic infraction, but that the officer needed to run the driver's information. *Id.* The officer learned from a radio check that the driver had no warrants and that his license was valid. *Id.*

The officer returned the licenses and insurance card to the driver, without reporting the result of the records check. *Id.* at 117–18. The officer proceeded to question the driver about the presence of anything illegal in his car. *Id.* at 118. The driver denied having anything illegal in his possession, but subsequently consented to a search. *Id.* The officer found drugs and drug paraphernalia on the driver during a pat down. *Id.* The Southern District found that under the totality of the circumstances, "[t]here was nothing to give a reasonable person any clear demarcation between the end of the traffic stop and the purported new, consensual encounter between officer and detainee." *Id.* at 120. As such, the Southern District found the fruits of the illegal search should be suppressed. *Id.*

A similar result was reached in *State v. Weddle*, 18 S.W.3d 389 (Mo.App. E.D. 2000). After determining the occupant of a parked van was not intoxicated, an officer continued to detain the occupant and asked for his license. *Id.* at 392. The warrant check came back clean. *Id.* However, the officer continued to question the occupant, and secured his consent to search the van. *Id.* The search yielded narcotics and weapons. *Id.* at 392–93. The State argued that even if the "extended" detention of the occupant was illegal, the subsequent search was consensual. *Id.* at 395. The Eastern District concluded that based on the circumstances before it, the occupant of the van merely submitted to a claim of lawful authority, as a person in the occupant's position would not have felt free to leave. *Id.* at 396. The search and the fruits of the search were found to be in violation of the Fourth Amendment. *Id.*

The State contends that cases like *Vogler* and *Weddle* have no application here because Officer Ryun secured Stoebe's consent to search her purse *while* Officer Ryun was running a warrant check on Stoebe's license, and thus *before* the traffic stop was complete.[12] In other words, the State contends that the trial court's conclusion that consent to search was secured *after* the traffic stop should have been completed was clearly erroneous. The record fails to support the State's claim. Despite bearing the burden of going forward with evidence and the risk of nonpersuasion during the suppression hearing, the State adduced very little detail from Officer Ryun. *Cf. State v. Foster*, 392 S.W.3d 576 n. 1 (Mo.App. S.D.2013) (holding on review of an order suppressing evidence the need to "glean [ ] facts from [a] thin record" where the state called only one witness, and adduced very little testimony from the witness). The thin record[13] from the suppression hearing is *silent* about when Officer Ryun began his attempts to secure consent to search Stoebe's vehicle; and about whether those efforts occurred before, during, or after Officer Ryun ran Stoebe's information through MULES.[14] The record is *silent*

12. The State cites *State v. Pesce*, 325 S.W.3d 565, 572–73 (Mo.App. W.D.2010), where this court upheld the denial of a motion to suppress finding that the defendant gave consent during the records check which meant it was obtained during the reasonable investigation of the traffic stop.

13. For purposes of this discussion, we have reviewed not only the testimony of Officer Ryun at the suppression hearing, but also the probable cause statement signed by Officer Ryun and attached to the felony complaint, even though that statement was never introduced into evidence by the State. See, however, footnote number 5.

14. The trial court's suppression order states that "at the moment [Stoebe] was seized and in Officer Ryun's patrol car, she was asked about contraband." The State seizes on this finding, and concludes that the trial court

about when or whether Officer Ryun completed the records check of Stoebe's information; about the results of that check; and about whether Officer Ryun communicated the results of the records check to Stoebe. The record is *silent* about whether or when Stoebe was issued a traffic citation or warning for driving with an improperly illuminated/dirty license plate—an offense Stoebe admitted to Officer Ryun that she had committed *before* she was removed from her vehicle and asked to sit in the patrol car. The record is silent about when or whether Stoebe's driver's license was returned to her. In short, the record contains *no evidence* from which a conclusion can be drawn as to the timing of Stoebe's purported consent and the completion of the reasonable investigation into the traffic stop.

■■■ The State asks us to find that the trial court committed clear error because it concluded that Stoebe's consent was secured *after* the traffic stop "became excessive" though no evidence supported this conclusion. Technically, the State is correct. *No evidence* indicated when Stoebe purportedly consented to a search of her purse in relation to the records check. However, our observation does not yield the result sought by the State. Though this record does not permit a finding one way or the other as to when consent was seemingly secured in relation to the records check, the trial court's ultimate ruling suppressing evidence because the State failed to sustain its burden was not clearly erroneous. The State offered no evidence to establish when it purportedly secured consent to search in relation to investiga-

tion of the traffic stop. The State did not, therefore, carry its burden of going forward or of persuasion to establish that Stoebe's consent to search was secured during its reasonable investigation of a traffic stop. *See Ramires*, 152 S.W.3d at 395 ("The burden of going forward with the evidence is defined as a party's duty to introduce evidence on an issue to have the issue decided by the fact-finder.... The burden of persuasion is defined as a party's duty to convince the fact-finder to view the facts in a way that favors that party.") (internal citations and quotations omitted).

The State argues that the trial court made a factual finding, to which we must defer, indicating that the discussions between Officer Ryun and Stoebe occurred while Officer Ryun was conducting the MULES search. We disagree. The trial court found that "at the moment [Stoebe] was seized and in Officer Ryun's patrol car, *she was asked about contraband.*" Even if we believe the phrase "at the moment" was intended by the trial court to be synonymous with "immediately," as the State suggests, the trial court made no finding about when Stoebe's consent was sought or secured. In fact, at a different point in its Judgment, the trial court found "[Officer] Ryun inquired of [Stoebe] if she had any contraband in the vehicle and *subsequently* requested consent to search." This finding differentiates between the timing of Officer Ryun's questioning about contraband and his "subsequent" efforts to secure consent. We know from this record that Officer Ryun asked Stoebe for consent to search her vehicle more than

found that Officer Ryun questioned Stoebe while he was running her records check. We disagree. The referenced finding in the suppression order is innocuous, and void of meaningful temporal references. We read the finding to mean the only thing the thin and limited evidence submitted during the sup-

pression hearing could permit—that the questioning of Stoebe occurred while she was in the patrol car—as no evidence was introduced permitting a conclusion about when that questioning occurred in relation to the records check.

once, suggesting persistence on his part over an unknown period of time. In short, we do not agree that the trial court made a finding of fact that Stoebe's consent was sought and secured while Officer Ryun was conducting a records check.

The State relies on *State v. Watkins*, 73 S.W.3d 881 (Mo.App. E.D.2002), claiming that under identical circumstances, the Eastern District reversed a trial court's suppression order. It is true that in *Watkins*, a traffic offender was asked to sit in a patrol car, and was acting nervously, and that the officer asked questions of the offender about whether he had anything illegal on him. *Id.* at 882. It is also true that the officer claimed he then sought and secured the offender's consent to search the stopped vehicle, whereupon a controlled substance was found. *Id.* at 883. Unlike our case, however, the Eastern District expressly found that:

> [B]ased on the evidence before us, *the testimony indicates* that the trooper was running a records check during his conversation with the defendant in which he asked for consent to search. As the record check was ongoing, the investigation of the traffic violation had yet to conclude and thus, the investigatory stop had not yet concluded when the search was requested and consent was given.

*Id.* at 884 (emphasis added). The "testimony" about which the Eastern District was referring was the officer's express testimony that "he was running a records check *during this conversation.*" *Id.* at 882.[15] Our record contains no such testimony from Officer Ryun. The State urges that we should "reasonably infer" a temporal connection between Officer Ryun's testimony that he ran a MULES search on Stoebe, and his separate testimony that he sought Stoebe's consent to search. We respectfully decline to do so, as on this record, such an "inference" would amount to rank speculation relieving the State of its burden of *going forward with evidence* to establish a special circumstance permitting a warrantless search.

The State did not establish that Stoebe's consent to search the purse was secured during the reasonable investigation of a traffic violation. The State's first point on appeal is denied.

### The State did not establish that Stoebe consented to a search of her purse regardless the lawfulness of her seizure

▮ The State argues that even if Stoebe's consent was not secured until *after* investigation of the traffic violation should have ended, Stoebe's consent was nonetheless secured, permitting the search of her purse. We agree with the State

15. The Eastern District does note that there was "insufficient evidence" that the traffic stop had concluded because there was no evidence that the records check had been completed, that a citation had been issued, that the driver's license had been returned, or that the driver had been told to return to his car. *Watkins*, 73 S.W.3d at 884. We do not read these observations as shifting the burden away from the State to bring forward persuasive evidence that it conducted a warrantless search pursuant to voluntary consent secured during a reasonable traffic stop. Rather, it is apparent the Eastern District highlighted the "omissions" from the evidence as they served in their absence to bolster the un-impeached testimony of the officer that he sought consent to search *while* he was running a records check. In stark contrast, the same "omissions" from the evidence in the present case are noteworthy because they highlight the absence of any testimony from Officer Ryun about when Stoebe's consent was secured in relation to a records check. To the extent the State reads *Watkins* to suggest that a traffic offender must put on evidence to prove when a records check was completed, a citation was issued, a license returned, or a driver permitted to return to a car in order to show that consent to search was not secured during investigation of a traffic stop, the State is in error.

that unlike the nonconsensual searches in *Granado* and *Sanchez,* there is no bright line rule invalidating consensual searches conducted after a traffic stop is or should be completed. Here, however, the trial court did not find that Stoebe's purported consent was involuntary merely because investigation into the traffic stop became excessive. The trial court found that under the totality of the circumstances, Stoebe's consent was involuntary. This is precisely the standard directed by *Vogler* and *Weddle* to be applied to determine the voluntariness of consent to search secured after the conclusion of a traffic stop.

We cannot conclude that the trial court clearly erred in finding Stoebe's purported consent to be involuntary. Officer Ryun testified that he could not remember how many times he asked Stoebe for her consent to search her vehicle, suggesting that he made the request more than once. Officer Ryun said Stoebe kept evading the question, and ultimately responded that he could search her purse, characterizations that permit the reasonable inference that Officer Ryun was persistent in his efforts to secure consent to search Stoebe's vehicle.[16] The circumstances here are not dissimilar to the facts in *Vogler* and *Weddle,* where persistent efforts to secure consent to search following a completed traffic stop led two appellate courts to conclude that orders denying a suppression motion must be *reversed* because the totality of the circumstances rendered consent involuntary. Here, the trial court *granted* Stoebe's suppression motion, finding the

totality of the circumstances rendered her consent involuntary. We do not believe it clearly erred in doing so.

■■■ The trial court correctly observed in its suppression order that the parameters of a traffic stop investigation can be expanded in the presence of circumstances creating a reasonably articulable suspicion of other criminal activity. *Kempa,* 235 S.W.3d at 61. In such a case, the expanded investigation is tied not to the initial traffic stop, but to the suspicion of other criminal activity. Here, the trial court found that Stoebe's "nervousness" did not suffice to justify an expansion of Officer Ryun's seizure of her person. The State has not challenged this conclusion on appeal. Moreover, though the trial court noted that the discovery of open containers in Stoebe's vehicle "could have permitted continued seizure and further investigation," the State did not take the position during the suppression hearing that it searched Stoebe's purse because of the presence of open containers in her vehicle. Instead, the State has steadfastly asserted that it searched Stoebe's purse pursuant to her consent—consent which was secured, if at all, *before* Officer Ryun saw "open containers" in the vehicle.

The State has not demonstrated that the trial court clearly erred in finding Stoebe's consent, if secured at all, to be involuntary. The State's second point on appeal is denied.

---

16. In fact, it is noteworthy that the trial court's order finds that Officer Ryun searched not only Stoebe's purse, but also her vehicle— a finding the State does not challenge. The impression left by this thin record, and by the tenor of the trial court's suppression order, hints at the strong likelihood that the trial court did not believe Officer Ryun searched Stoebe's purse because he secured Stoebe's consent to do so, but rather that Officer Ryun

searched both the vehicle and the purse incident to Kitchen's arrest. Though Officer Ryun's "probable cause statement" was not in evidence at the suppression hearing, Stoebe's trial counsel did elicit during cross examination that the statement indicated that Officer Ryun "advised Stoebe I was going to search the vehicle for more evidence, in lieu of the crime" after seeing open containers in the vehicle upon approaching Kitchen.

## Conclusion

The State failed to meet its burden of establishing that the motion to suppress should be overruled. We affirm the trial court's order sustaining Stoebe's Motion to Suppress.

All concur.