

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | WD82550 |
| | ) | |
| v. | ) | OPINION FILED:  July 30, 2019 |
| | ) | |
| DAWN GOUCHER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Henry County, Missouri**
The Honorable James K. Journey, Judge

Before Special Division:  Zel M. Fischer, Special Judge, Presiding, Gary D. Witt, Judge
and Thomas N. Chapman, Judge

The State brings this interlocutory appeal, challenging the trial court's grant of Dawn

Goucher's ("Goucher") motion to suppress her statement to law enforcement and seizure

of physical evidence relating to a charge of possession of a controlled substance.  The State

argues that the trial court erred in granting Goucher's motion to suppress because Goucher's

statement to law enforcement was made voluntarily and not during a custodial

interrogation.  Further, the State argues that the trial court erred in granting Goucher's

motion to suppress physical evidence based on an unreasonable search because Missouri

State Highway Patrol Trooper Dodson ("Trooper Dodson") had reasonable suspicion to continue the traffic stop and search Goucher's purse subsequent to a lawful stop of a vehicle in which she was a passenger. We affirm.

## Statement of Facts

On September 16, 2017, Goucher was a passenger in a motor vehicle that was owned by Goucher's mother, who was not present. The vehicle was driven by Eric Ingaman ("Driver"). Trooper Dodson initiated a traffic stop of the vehicle for allegedly failing to have a properly functioning rear license plate light and, after following the vehicle, for traveling briefly over the fog line on the right side of the roadway. Upon initial contact, Trooper Dodson obtained identification from both occupants of the vehicle, removed the Driver from the vehicle and had him sit in the passenger seat of his patrol vehicle. Another officer, Deputy Swindell, was on patrol when he observed Trooper Dodson making the traffic stop and pulled over to assist the Trooper. Deputy Swindell exited his patrol car and stood by the side of the vehicle while Trooper Dodson questioned Driver in his vehicle.

When Trooper Dodson informed Driver that the reason for the stop was the license plate light, Driver informed him that it was probably just dirty because Goucher lived on a gravel road. Trooper Dodson acknowledged that, when he came up behind the car, he noticed the car was very dirty.[1] Trooper Dodson told Driver he would write him a couple of warnings regarding the traffic issues. While in the patrol car, Trooper Dodson asked Driver if there was any illegal contraband in the car, to which Driver responded that, to his

---

[1] It is unclear on the video recording of the incident if the license plate light was functioning because of the bright lights of the patrol car reflecting off of the license plate.

2

knowledge, there was none. Trooper Dodson then asked Driver if he could have permission to search the vehicle, to which Driver said it was not his car so he could not give permission. Driver informed him that the car belonged to Goucher.

The insurance provided to Trooper Dodson by Goucher was expired. He left Driver in the patrol car and approached the passenger side of the vehicle to ask Goucher if she had current proof of insurance. When Trooper Dodson made contact with Goucher he noticed that she spoke quickly and that the appearance of her face at the time of the traffic stop was more "sunken in" than it appeared on her driver's license photograph. Goucher informed Trooper Dodson that she was unable to locate current proof of insurance but offered to call her mother, who was the actual owner of the vehicle, to obtain the current insurance. Trooper Dodson told her not to worry about it because he did not want to wake her mother since it was past midnight. He informed her that he was not concerned about the insurance. Trooper Dodson then asked if he could search the car. Goucher asked Trooper Dodson if he was going to tear up the car. Trooper Dodson said he would not as it was not his property. Trooper Dodson then asked again if he could search the car, to which Goucher assented.

Approximately fifteen minutes after the initial stop of the car, Trooper Dodson instructed Goucher to get out of the car and leave her purse in the car so he could search both. Goucher refused to give permission for Trooper Dodson to search her purse and stated this was due to the presence of personal items. Trooper Dodson continued to ask Goucher to get out of the vehicle and leave the purse. Goucher continued to refuse to let Trooper Dodson search her purse. Goucher eventually exited the vehicle with her purse.

3

Trooper Dodson then instructed Goucher to put her purse on the top of the car. Goucher continued to refuse to let go of her purse and allow Trooper Dodson to search it. Trooper Dodson ordered Goucher to move to the back of the vehicle, put her purse on the trunk, and then lean back against hood of his patrol car. She complied.

Trooper Dodson went to his patrol car and retrieved gloves in order to perform the search. Trooper Dodson picked up the purse and asked if there is anything illegal in the purse. Goucher did not respond. Trooper Dodson told Goucher he appreciates honesty and will be more helpful to her if she is honest. Trooper Dodson again asked while holding her purse with his hand partially inside if she had any illegal substances in the purse. After additional pressure from Trooper Dodson, Goucher told him she had a "little bit of meth." At no time up to this point had Goucher been given her *Miranda*[2] rights. Trooper Dodson then searched the contents of the purse and found the methamphetamine inside a makeup case within the purse. Goucher was placed under arrest approximately 20 minutes after the stop began.

Goucher was charged with felony possession of a controlled substance and the misdemeanor of unlawful possession of drug paraphernalia (a cut off straw was also found in the purse). Goucher filed a motion to suppress evidence, requesting the trial court to suppress her statements to Trooper Dodson regarding the presence of drugs within the purse as well as to suppress the contraband found in her purse. On October 18, 2018, the trial court heard evidence in a suppression hearing. At the hearing, Trooper Dodson

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

testified and the State provided the dash cam video of the traffic stop. Deputy Swindell was not called as a witness. Goucher testified on her own behalf.

On December 10, 2018, the trial court granted Goucher's motion to suppress as to both the statements and the items seized. The trial court found, as set forth in its order:

> According to the [Arresting Officer], his suspicions of illegal activity were aroused by the car's single swerve to the right, Defendant's appearance was different from her driver's license photo, and because Defendant talked fast.
> The Court finds that the search of Defendant's purse was unreasonable under the circumstances. There was no objective indicia of presently occurring illegal activity by the Defendant or the driver of the vehicle in which she was the occupant. There was no smell of drugs or alcohol. There was no plain view of paraphernalia or items commonly associated with drug use. While the questioning of the driver resulted in his admission that he had been on probation for drug charges there was nothing indicating present drug use. While the officer may have believed that Defendant's appearance and her speech patterns resulted from drug use, there is no corroborating objective facts to support a reasonable belief of present drug use or that she was possessing contraband.
> Defendant's motion to suppress is sustained.

**Standard of Review**

"A trial court's ruling on a motion to suppress may be reversed only if it is clearly erroneous." *State v. Shaon*, 145 S.W.3d 499, 504 (Mo. App. W.D. 2004). Our "review is limited to a determination of whether the trial court's ruling is supported by sufficient evidence from the record as a whole." *Id.*

> In reviewing a trial court's order on a motion to suppress, this court considers all facts and reasonable inferences in the light most favorable to the challenged order. The appellate court must defer to the trial court's determination as to the credibility of witnesses. This court may not substitute its discretion for that of the trial court when reviewing an order suppressing evidence. Nonetheless, this court must consider the ruling in light of the proper application of the precepts of the Fourth Amendment. The ultimate

5

issue of whether the Fourth Amendment was violated is a question of law which this court reviews de novo.

*Id.* (internal citations and quotation marks omitted). "If the trial court's ruling 'is plausible in light of the record viewed in its entirety,' this court 'may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *State v. Kovach*, 839 S.W.2d 303, 307 (Mo. App. S.D. 1992) (quoting *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990)). "The trial court was free to disbelieve any of the state's proof, even if uncontradicted." *State v. Foster*, 392 S.W.3d 576, 578 (Mo. App. S.D. 2013).

### Analysis

The State raises two points on appeal. In the State's first point on appeal, the State argues that the trial court erred in sustaining Goucher's motion to suppress to the extent it suppressed Goucher's statement to Trooper Dodson because Goucher's statement was made voluntarily and not during a custodial interrogation. In the State's second point on appeal, the State argues that the trial court erred in sustaining Goucher's motion to suppress the physical evidence based on an unreasonable search because Trooper Dodson had reasonable suspicion to continue the traffic stop and search Goucher's purse subsequent to a lawful stop of a vehicle for which she was a passenger.

### Point One

In the State's first point on appeal, the State argues that the trial court erred in granting Goucher's motion to suppress to the extent it suppressed Goucher's statement to Trooper Dodson because Goucher's statement was made voluntarily and not during

6

custodial interrogation. The State argues that Goucher's statement that there was methamphetamine inside her purse was made during the course of Trooper Dodson's traffic stop of a vehicle of which Goucher was a passenger and that Trooper Dodson had been granted voluntary permission to search the vehicle. The State argues that Goucher's consent to search the vehicle naturally prolonged the length of the stop, and when she admitted to having methamphetamine she was not in custody because she was not handcuffed, restrained by force or threatened.

"A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment." *State v. Stoebe*, 406 S.W.3d 509, 516 (Mo. App. W.D. 2013). "*Miranda* warnings are not necessary during questioning pursuant to a routine traffic stop because traffic stops are analogous to a '*Terry* stop.'" *State v. Schroeder*, 330 S.W.3d 468, 473 (Mo. banc 2011) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)). However, "[r]oadside detention may only last for the time necessary to conduct a reasonable investigation" of the reasons for the stop. *Schroeder*, 330 S.W.3d at 473. "A reasonable investigation may include 'asking for the driver's license, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose.'" *Id.* at 473-74 (quoting *State v. Barks*, 128 S.W.3d 513, 517 (Mo. banc 2004)). "The officer must release the motorist unless the responses create probable cause." *Id.* at 474. "An officer may continue to detain the individual beyond the time period necessary to investigate the traffic violation if the officer develops 'reasonable and articulable grounds for suspicion of illegal activity' based on the behavior and responses of the individual during the traffic stop." *State v. Stover*, 388 S.W.3d 138, 149 (Mo. banc 2012).

7

In *State v. Stoebe*, the Officer initiated a traffic stop of Stoebe's vehicle due to the rear license plate light "failing to illuminate the registration at a distance of fifty feet or more…[a]nd the registration was also covered by dirt, which was making it obstructed to where I couldn't view it." 406 S.W.3d 509, 511-12. The Officer had Stoebe sit in the patrol car with him while he ran her information through MULES[3] and asked her if there was anything illegal in the vehicle, to which she responded that there shouldn't be. *Id.* at 512. The Officer testified that he thought Stoebe was nervous and it was not "regular nervousness." *Id*. The Officer asked Stoebe for permission to search the vehicle but Stoebe did not answer the question directly. *Id.* Stoebe did give the Officer consent to search her purse. *Id.* When the Officer searched Stoebe's purse he found an Oxycodone prescription bottle, which was prescribed to another person. *Id.* at 513. This Court found that the record contained no evidence "from which a conclusion can be drawn as to the timing of Stoebe's purported consent and the completion of the reasonable investigation into the traffic stop" and therefore, "the State did not establish that Stoebe's consent to search the purse was secured during the reasonable investigation of a traffic violation." *Id.* at 519-20.[4]

In the case at bar, the State failed to establish that Trooper Dodson's questions as to what Goucher had in her purse were within the scope of the investigation of the traffic violations. The original stop involved a lack of a properly functioning rear license plate

---

[3] Missouri Uniform Law Enforcement System, a statewide database maintained by the Missouri Highway Patrol.

[4]*See also State v. Vogler*, 297 S.W.3d 116 (Mo. App. S.D. 2009) (holding that a driver was illegally detained after a traffic stop concluded and the fruits of an illegal search suppressed when he consented to a search after he had already been informed he would not receive a ticket and had received his license back after a radio check); *State v. Weddle*, 18 S.W.3d 389 (Mo. App. E.D. 2000) (holding that a driver did not feel free to leave and the fruits of the search were found to be in violation of the Fourth Amendment when the driver consented to a search after he was determined to not be intoxicated and the warrant check came back clean).

light and crossing the fog line. Goucher was not the driver of the vehicle. The reasonable time necessary to conduct an investigation of those traffic matters expired when Trooper Dodson informed Driver that he intended to give him a warning for those violations. However, Trooper Dodson still had cause to further investigate the automobile insurance issue. He approached Goucher and asked if she had current proof of insurance. When Goucher informed Trooper Dodson that she could not locate the current insurance card but would contact her mother (the actual owner of the automobile) to get the proper insurance information, Trooper Dodson informed her not to call her mother as it was after midnight and he didn't want her to wake her mother up. He then informed her that he was not concerned about the insurance issue. At this point the reasonable investigation of each and every offense identified by Trooper Dodson had concluded. *See Stoebe*, 406 S.W.3d at 520. It was at this point in time that he first began to request Goucher's permission to search the vehicle. Asking Goucher about drug usage and whether her purse contained illegal substances was outside the scope of the investigation of the traffic stop. A finding that the consent to search was only obtained after the reasonable time for the investigation of the traffic stop had concluded is supported by the evidence.

Further, there was nothing in the record establishing that Officer Dodson had a reasonable suspicion that Driver or Goucher was engaged in any current criminal activity beyond the traffic stop. As the trial court found, the only evidence Officer Dodson testified to in support of a reasonable suspicion of current criminal activity are that Goucher spoke quickly and her face appeared more sunken in than in her driver's license photo. Speaking quickly is commonly associated with nervousness. Nervousness alone does not give rise

9

to a reasonable suspicion. *Barks*, 128 S.W.3d 513 (holding that after the completion of a traffic stop, nervousness of the driver did not give rise to reasonable suspicion sufficient to allow the officer to ask if there was anything illegal in the vehicle). "The basis for the reasonable suspicion must arise within the perimeters of the traffic stop itself; suspicions based upon answers to questions asked after the stop is completed are irrelevant to the determination of whether specific, articulable facts supported a reasonable suspicion of criminal activity and provided a justification for further questioning once the traffic stop was completed." *State v. Granado,* 148 S.W.3d 309, 312 (Mo. banc 2004). Therefore, any response Goucher provided after the completion of the traffic stop is irrelevant to determining if there was reasonable suspicion, and her quick talking does not alone create reasonable suspicion. A finding that this was nothing more than a "fishing expedition" in hopes of finding illegal drugs is supported by the record.

The State failed to present evidence that the questions regarding drug use and the search of the contents of her purse were within the scope of the traffic investigation. The State further failed to present evidence that Officer Dodson had reasonable suspicion of criminal activity which arose during the reasonable period for the traffic investigation. We are not left with a strong feeling that the trial court clearly erred in suppressing Goucher's statement as there was sufficient evidence that the statement was made in response to questioning outside the scope of the traffic stop. Point One is denied.

### Point Two

In the State's second point on appeal, it argues that the trial court erred in granting Goucher's motion to suppress the physical evidence based on an unreasonable search

10

because Trooper Dodson had reasonable suspicion of criminal activity justifying him to continue the traffic stop and search Goucher's purse subsequent to a lawful stop of a vehicle in which she was a passenger. The State argues that Goucher's statement and Trooper Dodson's observation of Goucher's behavior created reasonable suspicion to continue the traffic stop and search Goucher's purse.

"The Fourth Amendment to the United States Constitution guarantees the right of all citizens to be free from unreasonable searches and seizures." *Barks*, 128 S.W.3d at 516. "Enforced pursuant to the exclusionary rule, the protections of the Fourth Amendment have been extended via the Fourteenth Amendment to defendants in state court prosecutions." *Stoebe*, 406 S.W.3d at 515. "Warrantless searches or seizures are per se unreasonable unless there are special circumstances which excuse compliance with federal and state warrant requirements." *Id.* (quoting *State v. Hensley*, 770 S.W.2d 730, 734 (Mo. App. S.D. 1989)). "The burden falls on the State to justify [the] warrantless search or seizure." *Id.* at 514. "At a suppression hearing, the State bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled." *State v. Weedle*, 18 S.W.3d 389, 391 (Mo. App. E.D. 2000).

"In determining whether the seizure and search were unreasonable, the court must determine 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 393. "Constitutionally sound probable cause is not dependent upon the subjective intentions of the officer. 'Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" *State v. Lane*, 937 S.W.2d 721, 723 (Mo.

11

banc 1997) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)). "Whether 'reasonable suspicion' exists depends on the totality of the circumstances." *State v. West*, 58 S.W.3d 563, 568 (Mo. App. W.D. 2001). "A suspicion is reasonable when the officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *State v. Lasley*, 583 S.W.2d 511, 518 (Mo. banc 1979) (abrogated on other grounds)). The standard is "whether the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate." *Lasley*, 583 S.W.2d at 518. "Officers may detain travelers involved in routine traffic stops for matters unrelated to the traffic violation if they have reasonable and articulable grounds for suspicion of illegal activity." *State v. Waldrup,* 331 S.W.3d 668, 674 (Mo. banc 2011) (internal quotation marks omitted).

Trooper Dodson testified that he noticed that Goucher was speaking quickly and her face seemed to be sunken when compared to her driver's license photo. As discussed in Point One, this is not sufficient reasonable suspicion to believe that criminal activity is *currently* occurring and therefore justifying a nonconsensual search of Goucher's purse. *See e.g., Barks*, 128 S.W.3d at 517; *Granado*, 148 S.W.3d at 312. The trial court detailed each fact known to the officer at the time he began his nonconsensual search of the purse and specifically found there were insufficient grounds to establish a reasonable belief of current criminal activity.

The State argues that Trooper Dodson had reasonable suspicion sufficient to search Goucher's purse. However, Goucher had a right to privacy regarding the contents of her

12

purse and she was adamant in protecting that right. A citizen's denial of a request by law enforcement to search an item or place cannot be used to support a finding of reasonable suspicion. *State v. Woolfolk*, 3 S.W.3d 823, 830 (Mo. App. W.D. 1999) ("Nor may the officer use a driver's refusal to consent to a voluntary request to search a vehicle as support of the requisite reasonable suspicion to support the search.") (internal quotation omitted). To hold otherwise, would create a body of law that anytime a law enforcement officer requested permission to search a place or item and consent was refused, the officer would thereby automatically have grounds to search, thereby eliminating any constitutional right to privacy. Goucher's consent to search the car did not include her purse and she made specifically clear that she did not want her purse searched due to personal items contained therein. Goucher is allowed to restrict her consent to search the car to exclude her purse. *See State v. Burkhardt*, 795 S.W.2d 399, 406 (Mo. banc 1990) ("The consensual search of the car itself was proper though defendant's consent was restricted by her statement that the luggage not be searched.").

The State attempts to argue that Goucher's consent to the search of the vehicle constituted a voluntary extension of the traffic stop and therefore the subsequent admission by Goucher of the presence of illegal drugs in her purse was admissible. However, our Supreme Court has noted that once the initial traffic stop was completed without there being reasonable grounds to believe there is current illegal activity, any further questioning is the result of an illegal seizure and detention of the person. *State v. Banks*, 128 S.W.3d 513, 517 (Mo. banc 2004). "The basis for the reasonable suspicion must arise within the perimeters of the traffic stop itself; suspicions based upon answers to questions asked after

13

the stop is completed are irrelevant to the determination of whether specific, articulable facts supported a reasonable suspicion of criminal activity and provided a justification for further questioning once the traffic stop was completed." *Granado,* 148 S.W.3d at 312. Evidence obtained by the exploitation of an illegal detention is inadmissible and cannot create the reasonable suspicion of criminal activity to justify the search. *Id.; Banks* at 517. Trooper Dodson's request to search the vehicle did not occur until after the traffic stop was completed and was thus also obtained by the exploitation of an illegal detention.

As discussed in Point One, Goucher's statement regarding having methamphetamines in her purse and consent to search the vehicle were both outside the scope of the traffic investigation and therefore are not admissible and cannot provide reasonable suspicion of criminal activity. The State failed to meet its burden that there was reasonable suspicion of criminal activity sufficient to justify the search of Goucher's purse. The trial court did not err in suppressing the physical evidence found in Goucher's purse. Point Two is denied.

**Conclusion**

The trial court's judgment is affirmed.

_____
Gary D. Witt, Judge

All concur

14